(No. 48146.—

*In re* GLEN WAYNE JENNINGS *et al.*, Minors.—(Kathryn Pihlaja, County Probation Officer, Appellant; Faye Jennings, Appellee.)

*Opinion filed October 5, 1977.*

MORAN, J., took no part.

James M. Carr and T. Jordan Gallagher, States's Attorneys, of Sycamore (William P. Brady and J. Powers McGuire, Assistant State's Attorneys, of counsel), for appellant.

Tyler, Peskind & Solomon, of Aurora (Richard R. Solomon, of counsel), for appellee.

James J. Doherty, Public Defender, of Chicago (John Thomas Moran and Aaron L. Meyers, Assistant Public Defenders, of counsel), *amicus curiae.*

MR. JUSTICE RYAN delivered the opinion of the court:

This appeal involves a dispute concerning the proper interpretation and application of the Juvenile Court Act (Ill. Rev. Stat. 1971, ch. 37, par. 701–1 *et seq.*). The State's Attorney of De Kalb County, on behalf of Kathryn Pihlaja, the De Kalb County probation officer and director of Children's Services for De Kalb County, appeals from the judgment of the Appellate Court for the Second District which, with one justice dissenting, reversed an

order of the circuit court of De Kalb County appointing Pihlaja guardian of the three minor children of Judy Jennings with authority to consent to their adoption. 32 Ill. App. 3d 857.

On April 24, 1972, Pihlaja filed petitions concerning the three Jennings children. The petitions alleged that Judy Jennings was the natural mother of the children, that the father was unknown, that the children were neglected and dependent, and that it would be in their best interests to be adjudged wards of the court. Judy Jennings filed an entry of appearance and consent as to each petition. On June 19, 1972, she signed entries of appearance which authorized the court to appoint a guardian of the children with authority to consent to their adoption. On June 21, 1972, the circuit court entered an order appointing Pihlaja temporary guardian of the children to furnish temporary custody and shelter care, and, in a separate order, also directed that she be appointed guardian of said children with power to consent to their adoption.

Two months later, on August 28, 1972, Faye Jennings, the children's grandmother, filed petitions for supplemental relief in regard to each of the three children. The petitions alleged that Judy Jennings, the mother, was mentally retarded and illiterate, that petitioner had raised and cared for the children since their birth, and that she was the proper person to have care and custody of the children. The petitions requested that the court terminate Pihlaja's guardianship and her power to consent to adoption, and that the petitioner be granted legal custody of the children.

On November 9, 1972, Judy Jennings signed a withdrawal of the consents to adoption she had previously executed. That same day, the grandmother's petitions were denied following oral argument by counsel. No evidentiary hearing was held concerning the allegations of the grandmother's petitions.

The Appellate Court for the Second District reversed the order and remanded for an evidentiary hearing on the grandmother's petitions over the dissent of one justice. The majority held that the grandmother was entitled to an evidentiary hearing on the merits of her petition. The majority also found that the circuit court was without jurisdiction because the children were not adjudged wards of the court and because the consents to adoption were void. We granted leave to appeal.

Two principal issues are presented for our resolution. The first issue is whether the children's grandmother had a right to an evidentiary hearing on her petition for change of guardianship. Second, it must be determined whether the circuit court lacked the requisite dispositional jurisdiction. Pihlaja contends that the grandmother had no statutory right to a hearing and that she has no standing to challenge the validity of the proceedings at which Pihlaja was appointed guardian.

The grandmother contends that she was entitled to an evidentiary hearing on her petition on the basis of section 5—8 of the Juvenile Court Act (Ill. Rev. Stat. 1971, ch. 37, par. 705—8). Section 5—8(2) at that time provided:

> "The minor or any person interested in the minor may apply to the court for a change in custody of the minor and the appointment of a new custodian or guardian of the person or for the restoration of the minor to the custody of his parents or former guardian or custodian. No legal custodian or guardian of the person may be removed without his consent until given notice and an opportunity to be heard by the court."

It is clear that the grandmother is a "person interested in the minor," and as such, under the statute, has the right to apply to the court for a change of custody. The statute does not, however, explicitly grant the right to a hearing to persons interested in the minor.

The Juvenile Court Act specifically designates the parties to a juvenile proceeding and the rights they are

afforded. (Ill. Rev. Stat. 1971, ch. 37, par. 701—20.) Section 1—20(1) of the Act provides:

> "[T]he minor who is the subject of the proceeding and his parents, guardian, legal custodian or responsible relative who are parties respondent have the right to be present, to be heard, to present evidence material to the proceedings, to cross-examine witnesses, to examine pertinent court files and records and also, although proceedings under this Act are not intended to be adversary in character, the right to be represented by counsel. ***"

The Act also allows limited rights to certain persons. Section 1—20(2) provides that a foster parent, who is not otherwise a party to the proceeding, and a representative of an agency or association interested in the minor have the right to be heard by the court, but do not become parties to the proceeding. A "person interested in the minor" is not mentioned in either provision.

The grandmother would be a necessary party if she were to be classified as a "responsible relative" under section 1—20(1). Section 4—1 of the Juvenile Court Act requires that the dependency petition name as respondents the "legal guardian or the person *** having custody or control of the minor, or *** the nearest known relative if no parent or guardian can be found." (Ill. Rev. Stat. 1971, ch. 37, par. 704—1.) Section 4—3 of the Act requires that summons shall be directed to each person "named as a respondent in the petition." (Ill. Rev. Stat. 1971, ch. 37, par. 704—3.) And section 1—20(1) quoted above confers the status of a party to the proceedings only upon a responsible relative who is a party respondent. Thus, the grandmother would be a "responsible relative" within the meaning of section 1—20(1) only if she would have been made a respondent in the dependency petition. And she would only be made a respondent, under the statute, if she were the person having custody and control of the minor or if she were the nearest known relative and the parent or guardian could not be found.

The grandmother contends, however, that it would be illogical to hold that a "person interested in the minor" may file an application for change of guardianship, but that no hearing on the application is required. We need not decide whether the grandmother as a "person interested in the minor" is entitled to a hearing on her petitions. We feel that her allegations reveal her status to be somewhat different from that of a typical person interested in the minor. Also, the allegations are of such a serious nature that to dismiss them without a hearing could lead to grave and unjust consequences.

First we note that the petitions allege that the grandmother had raised and cared for the children since their birth. This allegation raises the possibility that the evidence presented in support of it may reveal that the grandmother may have been the "person *** having custody or control" of the children, and that she was thus required to be a party respondent in the dependency proceedings pursuant to section 4—1 of the Act.

Second, the petitions alleged that the mother of the children was mentally retarded and illiterate. Although the discussion before the trial judge indicated that consideration was given to this allegation, the grandmother should be given a hearing on these allegations, the import of which goes to the validity of the consent that was signed by the mother of the children. We find that the serious nature of the allegations of the grandmother's petitions requires that an evidentiary hearing be held.

As noted earlier, the appellate court also held that the circuit court's failure to specifically adjudge the children wards was fatal to the circuit court's jurisdiction and that the consents to adoption were void.

Specifically, the grandmother contends that the three children were not adjudged to be wards of the court and that the consents to adoption filed by the children's mother were invalid. Section 4—8(2) of the Act provides:

"(2) If the court finds that the minor is a person

described in Section 2–1 [delinquent, otherwise in need of supervision, neglected or dependent] and that it is in the best interests of the minor and the public that he be *made a ward of the court*, the court shall note in its findings whether he is delinquent, otherwise in need of supervision, neglected or dependent, \*\*\* and *shall adjudge him a ward of the court* \*\*\*." (Emphasis added.) Ill. Rev. Stat. 1971, ch. 37, par. 704—8(2).

The adjudicatory orders of the court declaring the children to be dependent children and appointing Pihlaja guardian of the children with power to consent to their adoption did not specifically adjudge the children to be *wards of the court.* Each order did, however, contain the following finding:

"That said child is a dependent child and that the mother is unwilling for reasons other than financial circumstances alone to care for, protect or train said minor and it is for the interest of said child and this State that he be taken from said Judy Jennings [the mother] and placed under the guardianship of some suitable person appointed by this Court."

The orders further provided:

"It is therefore ordered, adjudged and decreed that [the child] is declared to be a dependent child; that [Kathryn Pihlaja, the] Probation Officer, DeKalb County Children's Services, \*\*\* is hereby appointed guardian of said child \*\*\*."

We do not quarrel with the proposition that in a special statutory proceeding an order must contain the jurisdictional findings prescribed by statute. (*Zook v. Spannaus,* 34 Ill. 2d 612; *In re Bartha,* 87 Ill. App. 2d 263; *In re Barr,* 37 Ill. App. 3d 10.) However, the term "ward of the court" as used in the statute has no significance apart from the legal status about which the statute is concerned. This same status can be acceptably described in other language. Blacks Law Dictionary (4th ed. 1951) defines "ward" as: "A person, especially an infant, placed by authority of law under the care of a guardian." In 39

C.J.S., *Guardian and Ward,* sec. 2 (1976), we find the following:

> "A *ward* is the person over whom or over whose property a guardian is appointed. With reference to minors, a ward is an infant placed by authority of law under the care of a guardian, and such an infant is a ward of the court appointing the guardian." (Footnotes omitted.)

The statute is concerned with the finding and adjudication of a particular status. It does not require that the order and proceedings be ritualized to the extent that language other than the words "ward of the court" which describes the same status may not be used.

If the accepted definitions of "ward" referred to above be substituted for that word in section 4—8 it becomes readily apparent that the findings and adjudication in the order of the trial court comply with the jurisdictional requirements of the statute. The trial judge advanced this reasoning in responding to counsel's argument of this issue in that court.

As to the consents which the mother signed authorizing the appointment of a guardian of the children with power to consent to their adoption, the acknowledgments attached to these documents do not fully conform to the requirements of section 10 of the adoption statute (Ill. Rev. Stat. 1971, ch. 4, par. 9.1—10(H)). That section provides that the form of the certificate of acknowledgment of consent shall be substantially as provided in the section. The acknowledgments that were executed contain only the first paragraph of the prescribed form but do not contain the second paragraph of the form prescribed in the statute. This omitted paragraph contains the following language:

> "I have fully explained that by signing such consent she is irrevocably relinquishing all parental rights to such child or adult and she has stated that such is her intention and desire."

The appellate court held that the failure of the acknowledgment to conform to the form prescribed by statute invalidated the consents.

We need not reach the effect of the failure of the acknowledgments to fully conform to the language of the adoption statute. Section 5—9(3) of the Juvenile Court Act (Ill. Rev. Stat. 1971, ch. 37, par. 705—9(3)) in part provided:

> "Parental consent to the order authorizing the guardian of the person to consent to the adoption of the Minor shall be given in open court whenever possible *and otherwise* must be in writing and signed in the form provided in 'An Act in relation to the adoption of persons ***'." (Emphasis added.)

Thus the statute requires that parental consent be given in either one of two methods. The petition filed by the grandmother did not raise this question as to the validity of the consents of Judy Jennings. In arguments to the trial court, counsel for the grandmother called the court's attention to the fact that the acknowledgments to the consents are not in the form prescribed in the adoption statute. He did not assert that she was not properly admonished or that the consents were not given in open court. In fact, the order entered appointing the guardian and authorizing her to consent to the adoption of the children finds that the mother did sign the consents "before the court." We, therefore, find no reason to question the validity of the manner in which the consents to adoption were acknowledged.

The grandmother also raises two subsidiary issues in this appeal. She asserts that she is entitled to all the relief prayed for in her petition due to the fact that the guardian failed to file a responsive pleading. We find this contention to be without merit. This issue was also not raised in the trial court. Although the record contains no responsive pleadings, the grandmother's counsel himself informed the

court before the argument concerning the grandmother's petition that there was a motion attacking the grandmother's standing. Counsel did not object to the absence of responsive pleadings or move for any relief for that reason. The argument of the motion covered not only the question of standing but also the grandmother's right to a hearing on her petition. The case was disposed of following the argument on the motion, and no responsive pleadings were required.

The grandmother also contends that the State has no standing to appeal to this court. We reject this contention because the Juvenile Court Act specifically directs that it is the duty of the State's Attorney to represent the People in proceedings under the Act. (Ill. Rev. Stat. 1971, ch. 37, par. 701—21.) The Act clearly contemplates that a probation officer employed by the county, and acting under order of court, as Pihlaja was, shall be represented by the local State's Attorney.

For the reasons stated herein, the appellate court's reversal of the circuit court's dismissal of the petitions of Faye Jennings is affirmed, and the cause is remanded to the circuit court of De Kalb County with directions to proceed in accordance with this opinion.

*Affirmed and remanded,*
*with directions.*

MR. JUSTICE MORAN took no part in the consideration or decision of this case.