*In re* DESIREE LIN WINKS *et al.* (The People of the State of Illinois, Petitioner-Appellee, v. Charles Winks *et al.*, Respondents-Appellants).

Fourth District   No. 4—86—0165

Opinion filed December 11, 1986.

Charles G. Reynard, of Bloomington, for appellants.

Ronald C. Dozier, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman, and Gwendolyn Klingler, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Alan J. Novick, of Bloomington, guardian *ad litem*.

JUDGE GREEN delivered the opinion of the court:

■■ ■ This case concerns six minor children who had been brought into this country and left with Bette and Charles Winks in McLean County. In a proceeding brought in the circuit court of McLean County under the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 701—1 *et seq.*) (Act), the Winkses were originally joined as respondents, but later "stricken" from the case. The minors were then declared to be dependents within the meaning of section 2—5(1)(a) of the Act (Ill. Rev. Stat. 1985, ch. 37, par. 702—5(1)(a)) and later placed under guardianship. The Winks attempted to appeal both the order striking them from the case and the order finding the minors to be dependent. We hold that we have jurisdiction to review only the order striking the Winks from the case. The attempted appeal from the dependency order must be dismissed. The principal issue in the case thus becomes the rights of various types of people to participate and to be heard in a proceeding of this nature. We conclude that the Winks had no such rights here.

Petitions were originally filed as to more than six minors, but several were dismissed by the State. Remaining were petitions in regard to Desiree Lin Winks, Ryan Brandon Winks, Carroll Curtis Winks, Manuel LNU (last name unknown), Vanessa Rene LNU, and Mirinda Natasha Winks. The evidence indicated that none of the minors bearing the name "Winks" were related by blood or adoption to Bette or Charles Winks. The separate cases concerning these six minors were consolidated for further proceedings. One guardian *ad litem* was appointed for the minor respondents and one counsel was appointed for the natural parents of the minors. Each of the petitions alleged that the minors were dependent because they were present in McLean County "without a parent, guardian, or legal custodian." (See Ill. Rev. Stat. 1985, ch. 37, par. 702—5(1)(a).) Bette and Charles Winks were listed as respondents under the designation, "RELATIVES."

The motion of the State to "strike" the Winks as respondents was filed on October 11, 1985. That motion was heard at the same time as a motion by the Winks for summary judgment in their favor as to five of the minors. After a hearing was held on the two motions, the court entered an order on February 6, 1986, allowing the motion to "strike" the Winks as respondents and then striking their motion for summary judgment. The Winks moved on February 26, 1986, for reconsideration of that ruling. After a further hearing, the court entered an order on March 4, 1986, denying the motion for reconsideration and making a finding pursuant to Supreme Court Rule 304(a) (103 Ill. 2d R. 304(a)), thus making appealable the order striking the Winks as respondents. After a further hearing, the court entered an order, also on March 4, 1986, finding the minors to be dependent and making them wards of the court.

On March 10, 1986, the Winks filed a notice of appeal in the circuit court purporting to appeal not only from the order striking them as respondents but also from the adjudication order of March 4, 1986, finding the minors to be dependent. Subsequently, and after holding a dispositional hearing, the court entered an order on April 24, 1986, appointing the Guardian Administrator of the Department of Children and Family Services guardian of the minors with power to place. No further notice of appeal was filed by anyone. The Winks maintain on appeal that the circuit court erred in dismissing them as parties and in finding the minors to be dependent. In support of the Winks' latter contention, they assert that (1) the minors were shown to have living parents and thus were not "without a parent, guardian or legal custodian" within the meaning of section 2—5(1)(a) of the Act; and (2) the action of the court in declaring the children to be dependent impairs an obligation of contract owed to them.

■ However, before proceeding with the merits of this appeal, we have a responsibility to *sua sponte* determine the extent of our jurisdiction and to refrain from reviewing any ruling which we do not have jurisdiction to review. (*Rothert v. Rothert* (1982), 109 Ill. App. 3d 911, 918, 441 N.E.2d 179, 183.) The order striking the Winks was an order final as to them although determination as to the status of the minors and the disposition to be made of them remained as issues before the court. The Rule 304(a) finding made on March 4, 1986, clearly made the order "striking" the Winks as respondent appealable and the March 10, 1986, notice of appeal was timely in that respect. We have jurisdiction over that portion of the appeal.

■ On the other hand, the adjudicatory order of dependency entered on March 4, 1986, was not final as to a claim or party. When a

minor is adjudicated dependent, neglected, or delinquent, only after the entry of a dispositional order is there a final determination of the claim. (*In re J.N.* (1982), 91 Ill. 2d 122, 127, 435 N.E.2d 473, 475.) The only provision authorizing an interlocutory appeal as of right after such an adjudicatory determination is made is that of Supreme Court Rule 662(a) (87 Ill. 2d R. 662(a)) which makes an adjudication of wardship in a delinquency proceeding appealable after 90 days if no order of disposition has been entered. Here, the dispositional order was not entered until long after the filing of the notice of appeal on March 10, 1986. A notice of appeal filed prior to the entry of the order from which appeal is taken is a nullity. *Horvath v. Loesch* (1980), 87 Ill. App. 3d 615, 410 N.E.2d 154; *Hale v. Ault* (1974), 24 Ill. App. 3d 10, 321 N.E.2d 121; *Grissom v. Buckley-Loda Community Unit School District No. 8* (1973), 11 Ill. App. 3d 55, 296 N.E.2d 624.

■ We are powerless to pass on the propriety of the order of dependency and must dismiss the attempted appeal from that order.

The evidence before the court when it ruled on the motion to strike the Winks as respondents consisted of some evidence at an earlier shelter care hearing and affidavits of two of the natural mothers who appeared personally in court and of a father who appeared in court after the hearing on the motion to strike. No question is raised as to the propriety of considering this evidence. In toto, the evidence showed that the six children had been obtained by the Winks, through intermediaries and with payment of money, from parents in Mexico. At the time of the filing of the original petition, those children were from one month of age to three years and three months of age and had been with the Winks from three months to less than one month. The avowed purpose of the Winks was to adopt these children. Some evidence indicated that there was an oral promise with at least one parent of each of these children that the Winks might adopt them.

The evidence also indicated that the Winks had several other young children under their care. The manner in which the Winks were proceeding was quite secretive. They had made no reports to any governmental agency and many people had become concerned that they might be engaged in the smuggling of children. The trial court was quite concerned with this problem. One of the bases of its order striking the Winks was that their failure to comply with certain statutory procedures was sufficient, of itself, to keep either of them from being a "legal custodian" within the meaning of section 1—20(1) of the Act (Ill. Rev. Stat. 1985, ch. 37, par. 701—20(1)). As we subsequently explain, we do not find it necessary to delve into

the mass of State or Federal statutes or regulations that the Winks might have been violating in order to uphold the action of the circuit court.

The Juvenile Court Act is not entirely clear in regard to the question of who is entitled to participate in a dependency proceeding brought under the Act. The most significant statement in the Act is section 1—20(1), cited by the circuit court. It states that "the minor who is the subject of the proceeding and his parents, guardian, legal custodian or responsible relative who are parties respondent" have the right to be present and participate in juvenile adjudications. (Ill. Rev. Stat. 1985, ch. 37, par. 701—20(1).) Section 1—20(2) then provides, in part, that any "current and previously appointed foster parent" also has a right to be heard but does not become a party to the proceedings. Ill. Rev. Stat. 1985, ch. 37, par. 701—20(2).

Section 1—12 of the Act states:

" 'Legal custody' means the relationship created by an order of court which imposes on the custodian the responsibility of physical possession of a minor and the duty to protect, train and discipline him and to provide him with food, shelter, education and ordinary medical care, except as these are limited by residual parental rights and responsibilities and the rights and responsibilities of the guardian of the person, if any." Ill. Rev. Stat. 1983, ch. 37, par. 701—12.

The evidence before the court at the time of the hearing on the motion to strike showed that Bette and Charles Winks had no rights to appear, participate, or be heard under the terms of section 1—20(1) and (2). Obviously, they were not "parents." The Winks maintain that they stood *in loco parentis* to the children but the cases they cite all concern rights of children to inherit property. Moreover, we are aware of no case where as short a relationship as that between the Winks and the children has placed adults in an *in loco parentis* relationship with children. The Winks were not "guardians" because that status arises only from a grant of authority. (See Ill. Rev. Stat. 1985, ch. 37, par. 701—11.) They had received no such grant of authority. Most importantly, they were not "legal custodians" because they had not been appointed by a court as required by section 1—12. As they were not relatives of the minors, neither could qualify as a "responsible relative." Finally, they could not be considered to be "appointed foster parents" within the meaning of section 1—20(2) because no person or entity with authority to do so had made such an appointment.

Section 4—1(2) of the Act requires that a petition initiating a juve-

nile proceeding shall contain, among other allegations, "the name and residence of [the minor's] legal guardian or the person or persons having custody or control of the minor, or of the nearest known relative if no parent or guardian can be found" (Ill. Rev. Stat. 1985, ch. 37, par. 704—1(2)). Bette and Charles Winks assert that because they had actual custody of the minors, they had a right to participate and be heard and should not have been stricken from the proceedings. We do not agree.

Section 4—1(2) sets forth the persons who are initially respondents to the proceedings, but section 1—20(1) and (2) sets forth the rights of those respondents to take part in the proceedings. Subsection (1) conditions the rights described therein to those respondents who meet the further qualifications set forth, i.e., "parents, guardian, legal custodian or responsible relative." Subsection (2) does not make being a respondent a necessary condition to the right to be heard; it applies only to appointed foster parents and agency representatives. The apparent reason for requiring persons merely having simple custody or control of the minor parties is so that such people can be required to bring the minor before the court.

Our determination of the relationship between sections 1—20(1) and (2) and 4—1(2) as to this case is supported by an analysis of the two sections made by the supreme court in the case of In re Jennings (1977), 68 Ill. 2d 125, 368 N.E.2d 864, cited by the Winks. There, a mother had authorized a circuit court to enter an order finding her three minor children to be dependent and appointing a guardian with power to consent to their adoption. Later, the children's grandmother was denied leave to petition for change of custody of the children. The supreme court held that the grandmother should have been permitted to intervene.

At the time the Jennings case was in the circuit court, section 5—8(2) of the Act permitted "any person interested in the minor" to petition for a change of custody. (Ill. Rev. Stat. 1971, ch. 37, par. 705—8(2).) Similar language is in the present Act. (Ill. Rev. Stat. 1985, ch. 37, par. 705—8(3).) The supreme court concluded that it was not necessary to determine whether the grandmother was a person interested in the minor because her petition had indicated that she qualified under the responsible-relative category of section 1—20(1) and had a right to be heard. The supreme court first concluded that because her petition alleged that she had "raised and cared for the children since their birth," those allegations indicated that she would have qualified to be a respondent under section 4—1(2). (In re Jennings (1977), 68 Ill. 2d 125, 131, 368 N.E.2d 864, 867.) Then, the

court indicated that the second step was to determine if she met the qualifications of section 1—20(1). It concluded that her allegations indicated that she met the responsible-relative qualification.

The Winks also rely on the cases of *In re Dively* (1979), 79 Ill. App. 3d 428, 398 N.E.2d 635, and *In re Anast* (1974), 22 Ill. App. 3d 750, 318 N.E.2d 18. In *Dively*, a mother of a child born out of wedlock had placed her child with Alice R. and Wayne Kiel. Three years later, a petition was filed alleging that the minor was neglected. A decree of neglect was entered and the Guardian Administrator for the Department of Children and Family Services was appointed guardian. Later, the Kiels filed a petition for return of custody to them. Their petition was denied and they filed a notice of appeal. Question arose as to their right to appeal. The court held that the Kiels were "persons 'interested in the minor' " within the meaning of section 5—8(3) of the Act (Ill. Rev. Stat. 1977, ch. 37, par. 705—8(3)), and entitled to be heard on a petition to modify custody, and entitled to appeal from a denial of that petition. (*In re Dively* (1979), 79 Ill. App. 3d 428, 431, 398 N.E.2d 635, 637.) Unlike the Kiels, the Winks were not seeking a change in custody, but seeking to avoid an original adjudication of dependency. In *Anast*, a stepfather who had legal custody of two children pursuant to a divorce decree was held to be a necessary party entitled to notice and to be heard at an adjudicatory hearing brought under the Act. Unlike the stepfather, the Winks did not have *legal* custody.

The cases of *Jennings*, *Dively*, and *Anast* all indicate that the category of people who may participate and be heard in regard to an original petition under the Act is limited by section 1—20(1) and (2). Even though the grandmother in *Jennings* clearly fell within a category having a right to participate and be heard, the court, nevertheless, deemed it necessary to indicate that she was alleging that the children's mother lacked the mental capacity to consent to the adoption of the children. Here, the Winks do not come within any of the categories defined in section 1—20(1) or (2). Whether legal or illegal, the nature of their operation is not such as to justify any loosening of the requirements of section 1—20(1) or (2). While, as with the grandmother in *Jennings*, they qualify as respondents under section 4—1(2) of the Act, unlike that grandmother, they do not qualify to participate or be heard under section 1—20(1) or (2). While the circuit court could have let them remain as respondents, they would have had no rights to make motions, put in evidence, cross-examine witnesses, make arguments or otherwise participate or be heard. They were not prejudiced by being stricken from the case.

Accordingly, we affirm the order striking Bette and Charles Winks as parties respondent and dismiss the balance of the appeal.

Affirmed in part, appeal dismissed in part.

McCULLOUGH and WEBBER, JJ., concur.