*In re* E.P. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. Roy Pluskis, Respondent-Appellant).

Fourth District   No. 4—87—0238

Opinion filed March 30, 1988.

Michael J. O'Brien, of Meachum & Meachum, of Danville, for appellant.

Craig H. DeArmond, State's Attorney, of Danville (Kenneth R. Boyle, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Paul T. Manion, of Manion, Janov, Devens & Fehey, Ltd., of Hoopeston, for John McArthur and Holly McArthur.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On July 22, 1986, following hearings in the circuit court of Vermilion County, the court entered an order terminating the parental rights of respondents Roy and Adrienne Pluskis, the natural parents of the minor children in the four cases consolidated for appeal. The court found (1) respondent Roy Pluskis was an unfit person within the meaning of section 1(D) of "An Act in relation to the adoption of persons ***" (Adoption Act) (Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)); and (2) respondent Adrienne Pluskis made an unconditional surrender of her parental rights as to the minors. The court then appointed a guardian for the minors with authority to consent to their adoption. In an order entered March 18, 1987, the court denied respondent's motion to vacate the judgment or in the alternative for a new trial. The court found, *inter alia*, (1) all the minors were served summons in advance of the termination hearing and the court had jurisdiction over the minors as well as the respondent parents; (2) an order of wardship was not appropriate at the adjudicatory hearing; (3) the termination order was sufficient and made a finding that it was in the minors' best interests that a guardian be appointed; and (4) the respondent father was properly found unfit based on the evidence in the record. Respondent Roy Pluskis appeals the order entered July 22, 1986. We affirm.

On appeal, respondent Roy Pluskis maintains: (1) the trial court did not have jurisdiction to terminate his parental rights, because (a) the court did not have personal jurisdiction of the minors throughout the proceedings, (b) the court failed to adjudicate the minors to be wards of the court, and (c) the court failed to make a finding that it was in the best interests of the minors that a guardian be appointed with authority to consent to adoption; (2) the trial court abused its discretion in allowing hearsay testimony on the issue of parental unfitness; (3) the trial court abused its discretion in denying respondent's motion to dismiss the termination proceedings based on the

State's violation of "An Act to enact the Interstate Compact on the Placement of Children ***" (Interstate Compact Act) (Ill. Rev. Stat. 1985, ch. 23, par. 2601 *et seq.*); and (4) the trial court's finding of parental unfitness as to the respondent father was not supported by clear and convincing evidence.

A trial court may appoint a guardian with the authority to consent to the adoption of a minor under section 5—9 of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 705—9), but the court must first find by clear and convincing evidence that a nonconsenting parent is unfit as defined by section 1 of the Adoption Act, which describes an "unfit person" as:

> "[A]ny person whom the court shall find to be unfit to have a child, without regard to the likelihood that the child will be placed for adoption ***." (Ill. Rev. Stat. 1985, ch. 40, par. 1501(D).)

Section 1(D) of the Adoption Act then lists various specific grounds of unfitness. Those alleged here were: (1) the continuous and repeated substantial neglect of the minors; (2) extreme and repeated cruelty to the minors; (3) failure to protect the minors from conditions within their environment injurious to their welfare; (4) other neglect or misconduct toward the minors; and (5) depravity of respondent Roy Pluskis.

The State initially filed petitions for adjudication of wardship of the minors, without requesting a termination of parental rights, on October 9, 1985. Fact sheets attached to each petition alleged in part that the minors were abused and neglected, because (1) the respondents left the State of Illinois with the children in violation of a court order; (2) respondents had no financial resources to provide for the children; (3) the children were not attending school; (4) the respondents were not providing emotional or physical stability or care; and (5) a physical examination of the two older children revealed definite sexual abuse.

Following a temporary shelter care hearing held on October 9, 1985, the court found probable cause existed to show each minor was an abused and/or neglected child. The minors were placed in temporary shelter care, and a temporary guardian was appointed. Respondents failed to appear at the hearing. Notice was mailed to the last known address of respondents and was published in a Vermilion County newspaper. Summons were served on the guardian of the minors. Following an adjudicatory hearing held on November 8, 1985, the court (1) entered a default judgment against the respondent parents; (2) found the minors to be neglected and abused as defined in

section 2—4 of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 702—4); and (3) found the respondents were unfit as defined in the Adoption Act. No dispositional hearing was held.

The State filed a petition to terminate respondents' parental rights on January 10, 1986. An amended petition was filed on May 20, 1986. The minors were personally served with summons in connection with the amended petition.

In an *in camera* interview by the court during the trial, the two older minors, ages six and eight at time of trial, each testified that respondent Roy Pluskis placed his finger and his penis into their vaginas on more than one occasion and that their mother, respondent Adrienne Pluskis saw him do this, but failed to stop him.

Adrienne Pluskis then appeared in open court. She testified she was willing to consent to the adoption of all four children and had reached an agreement with John and Holly McArthur, the children's foster parents, to allow her to have four visits per year with the children. She said she understood the visits would cease if Roy Pluskis were released from prison. She later testified that, although she had never observed Roy touching the girls in the genital area, she had seen him in bed with the older girl "rocking [from] side to side" in the manner he preferred when having sexual intercourse with Adrienne. She said she had seen this same type of incident with Roy and the oldest child on four occasions during a 10-day period in July 1985. She also testified that Roy would place his hands on the girls' upper legs under their nightgowns and that the children cried and complained he was playing "too rough." She said she did not pursue the matter, because she was afraid of Roy. She said he would "beat her up" on the average of more than once a month. Finally, she admitted (1) that she had previously denied knowledge of Roy's sexual abuse of the children and had denied he had ever beaten her; and (2) that she had been given immunity from criminal prosecution relating to sexual abuse charges that might be brought, making her accountable for sexual abuse of the children.

Dr. Kathleen Buetow testified at trial that she had examined all of the girls on October 7, 1985, in her office. She said she found nothing remarkable in her examination of the two younger girls. She testified, over respondent's objection, that the two older girls told her Roy Pluskis had touched them in the vaginal area with his finger and his penis. The physical examinations of each of the older girls revealed marked redness and irritation of the labia, "extremely" distended introitus, or opening to the vagina, and torn or missing hymenal rings. Dr. Buetow testified that she knew of no medical reason, other than

sexual abuse, for the stretching of the introitus of the girls.

Finally, Officer Gene Woodard testified at trial that he was an investigator with the Danville police department, juvenile division. He testified, over respondent's objection, that the two older girls had each told him that Roy Pluskis had placed his hands and penis in their vaginal areas.

Respondent Roy Pluskis presented the testimony of his sister and brother-in-law, with whom the family had been staying in Kentucky. Both witnesses testified that they had not observed Roy Pluskis in bed with the children or any other indication that he was sexually abusing them. The sister said the children did not exhibit any fear of being around respondent, and she had never seen him harm them.

Respondent closed his defense by introducing, for impeachment purposes, a portion of a transcript of an evidence deposition taken from Dr. Buetow in March 1984. There, she had said an examination of one of the two older girls in June 1983 revealed a normal-sized introitus and an intact hymen. Respondent also introduced, for impeachment purposes, portions of a discovery deposition of Adrienne Pluskis in March 1984. There, Adrienne testified that she did not believe Roy was a violent person, and she could not recall that he had ever beaten her, struck her or caused her any physical harm.

Respondent argues initially that the trial court was without jurisdiction at the adjudicatory hearing, because a summons had not been personally served on his minor children prior to that hearing. He maintains that, as a result, the order of neglect was void, and the trial court did not have jurisdiction to terminate his parental rights. Finally, respondent maintains the trial court was without jurisdiction because it failed to make the minors wards of the court, and failed to make a specific finding that it was in the best interests of the minors that a guardian be appointed with authority to consent to the minors' adoption.

■■ We note, initially, that personal service of summons on a minor is no longer a prerequisite to obtaining jurisdiction over the minor. (*In re Pronger* (1987), 118 Ill. 2d 512, 517 N.E.2d 1076.) In *Pronger*, the supreme court ruled that an amendment to section 4—3 of the Juvenile Court Act (Ill. Rev. Stat., 1987 Supp., ch. 37, par. 704—3), effective January 12, 1987, allowed service on a minor's legal guardian or custodian. The court indicated the amendment applied retroactively. We conclude the trial court, here, had jurisdiction over the minors at the adjudicatory hearing, and the judgment finding of neglect stood as a valid adjudicatory order.

■■ Moreover, the termination order itself was not defective for

the court's failure to make the minors wards of the court or to specifically find it in the minors' best interests to appoint a guardian. Section 5—9 of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 705—9) does not state that a minor must be declared a ward of the court prior to the appointment of a guardian. In addition, the supreme court of Illinois has said the finding that a minor is in need of a guardian is tantamount to a finding of wardship. *In re Jennings* (1977), 68 Ill. 2d 125, 132-33, 368 N.E.2d 864, 868.

The court here expressly found respondent to be an unfit person and then found it was in the minors' best interests to terminate respondent's parental rights. The court's finding of unfitness, termination of parental rights and appointment of a guardian were sufficient to satisfy the requirement of adjudication of wardship. (*Jennings*, 68 Ill. 2d 125, 368 N.E.2d 864.) Respondent maintains *Jennings* differed from the instant case in that, there, the petition being heard at the adjudicatory hearing had requested a determination of wardship. However, here, the original petition had requested a determination of wardship, and that request remained before the court.

■ Respondent's next contention is that the trial court abused its discretion in allowing the admission of hearsay testimony on the issue of parental unfitness. He specifically objects to testimony of Officer Gene Woodard as to statements made to him by the children. Prior to trial, the court denied respondent's motion *in limine* to exclude such testimony. The basis for the court's ruling was section 4—6(4)(c) of the Juvenile Court Act, which states:

> "Previous statements made by the minor relating to any allegations of *abuse* or *neglect* shall be admissible in evidence. However, no such statement, if uncorroborated and not subject to cross-examination, shall be sufficient in itself to support a finding of *abuse* or *neglect*." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 37, par. 704—6(4)(c).)

Respondent argues that this section is applicable only to determine whether a minor has been neglected or abused and not, as here, at a proceeding to terminate parental rights.

Sections 2—4(1) and 2—4(2) of the Juvenile Court Act, respectively, define "neglected" and "abused" minors as a status of minors subject to proceedings for adjudication of wardship. (Ill. Rev. Stat. 1985, ch. 37, pars. 702—4(1), (2).) The original adjudication of November 8, 1985, in regard to the four minors, was made pursuant to those statutory provisions. Section 4—6 of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 704—6) provides for various rules of evidence peculiar to juvenile proceedings. Most of its subsections state that

they are applicable to all proceedings under the Juvenile Court Act. Section 4—6(1) expressly provides it is applicable only to adjudicatory proceedings. Section 4—6(4) of the Juvenile Court Act is silent as to the extent of its applicability. The instant proceeding for appointment of a guardian with power to consent to adoption is a proceeding under section 5—9 of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 705—9). The alleged unfitness of respondent is based upon allegations of neglect and abuse.

As respondent points out, his parental rights are fundamental rights. (*Santosky v. Kramer* (1982), 455 U.S. 745, 71 L. Ed. 2d 599, 102 S. Ct. 1388.) Respondent contends that, accordingly, because of the inherent weakness of hearsay testimony, section 4—6(4)(c) should be determined to be applicable only to show the status of minors and not in regard to the issue of whether a parent's rights should be terminated. However, section 4—6(4)(c) appears to have been enacted because of the difficulty of proving acts of sexual abuse or neglect. Acts of abuse are particularly hard to prove because they usually occur in the presence of only the victim and the accused. When hearsay evidence concerning statements by the minor victim is introduced pursuant to the requirements of section 4—6(4)(c) in regard to corroboration, the evidence is very helpful in the search for the truth. The circuit court properly overruled the hearsay objection to this evidence.

Respondent further contends that the admission of Woodard's testimony deprived him of his right to confrontation of the witnesses. This court stated in *In re K.L.M.* (1986), 146 Ill. App. 3d 489, 496 N.E.2d 1262, that a few courts have held confrontation rights to be an aspect of due process in purely civil proceedings to a limited extent, but that, in any event, the doctrine was not to be strictly applied in those cases.

The relationship between the confrontation clause and the hearsay rules has been described in these words:

> "As a practical matter, actual treatment of hearsay in Illinois should rarely conflict with the confrontation clause's search for trustworthiness. Statements to be admitted pursuant to a hearsay exception must possess the 'indicia of reliability' and provide the 'satisfactory basis for evaluating the truth of the prior statement' mandated in [*Dutton v. Evans* (1970), 400 U.S. 74, 27 L. Ed. 2d 213, 91 S. Ct. 210]." M. Graham, Cleary & Graham's Handbook of Illinois Evidence §807.1, at 616-17 (4th ed. 1984).

Here, any due process rights involved were adequately protected by safeguards that assured reliability of the evidence and allowed the

trier of fact to weigh the truthfulness of the testimony. Here, there was substantial corroboration of the substance of the children's prior statements to Woodard through (1) the testimony of Adrienne Pluskis that she had seen what could appear to have been sexual intercourse by respondent Roy Pluskis with the oldest child, as well as other acts of apparent sexual abuse, (2) the physical findings of sexual abuse testified to by Dr. Buetow, and (3) the testimony of each victim during the *in camera* proceedings. The children's testimony was remarkably similar, and each said she had witnessed respondent touching the other.

■■ Respondent's next issue concerns the trial court's denial of his motion to dismiss based on the State's noncompliance with the Interstate Compact Act (Ill. Rev. Stat. 1985, ch. 23, par. 2601 *et seq.*). The Interstate Compact Act provides for an exchange of information between the placement authorities of the sending and receiving States prior to sending a child to a home or child care institution in another State. Respondent contends that no notification in writing was sent to the Kentucky authorities prior to the Pluskis children being brought to Illinois, and there was no evidence that the office of the administrator of the Interstate Compact Act in Illinois was involved.

The trial court here noted in a letter to the parties explaining its ruling that the Interstate Compact Act was designed to prevent "dumping" of wards on another State without notice and against the best interests of the children. The court denied the motion to dismiss, on the basis that the Interstate Compact Act did not apply to the instant proceedings. The court found the probation officer was acting in good faith and on directions of the circuit court to enforce the visitation rights of the foster parents when she went to Kentucky to retrieve the children. The court noted that she was ordered by the Kentucky court to take all four children although the visitation order applied only to the older two. The court concluded that, because Illinois had jurisdiction of the parties and was continuing an investigation of the case, the provisions of the Interstate Compact Act were not mandatory.

The provisions of the Interstate Compact Act are triggered when a sending agency causes:

"[T]o be sent or brought into any other party state any child for placement in foster care or as a preliminary to a possible adoption." (Ill. Rev. Stat. 1985, ch. 23, par. 2601, art. III(a).)

Placement is defined as "the arrangement for the care of a child in a family free or boarding home or in a child-caring agency or institution." Ill. Rev. Stat. 1985, ch. 23, par. 2601, art. II(d).

The evidence clearly indicates there were no adoption proceedings pending or possible prior to the termination of the natural parents' parental rights, and the Kentucky court did not order the placement of the children in foster care. The probation officer was enforcing an Illinois order of visitation and was in the midst of an investigation of the children. We conclude the trial court did not abuse its discretion in denying respondent's motion to dismiss for violation of the Interstate Compact Act regulations.

■ Respondent's final contention is that he was not shown to be unfit by clear and convincing evidence. Although respondent is correct that a finding of unfitness in order to justify the termination of parental rights must be shown by clear and convincing evidence, the trial court's finding of unfitness will not be reversed unless it is contrary to the manifest weight of the evidence. *In re Brown* (1981), 86 Ill. 2d 147, 153, 427 N.E.2d 84, 87.

Here, both victims testified during an *in camera* interview that respondent had touched their genitals with his hand and penis. The victims were able to present their testimony without the assistance of leading questions, and each volunteered much of the testimony concerning the incidents of abuse. The trial court found the testimony to be "extremely credible and reliable." The court noted that the children's testimony did not appear to have been made up and was corroborated by the testimony of Dr. Buetow concerning the history and physical examinations she made of the girls. The court also found the testimony of Adrienne Pluskis provided further corroboration. The court concluded there was sufficient proof by clear and convincing evidence of extreme and repeated cruelty, of repeated and substantial neglect, and of failure to protect the minors from an environment that is injurious to their welfare. The court made a further specific finding of depravity as to respondent Roy Pluskis. We find the court's conclusions were not contrary to the manifest weight of the evidence.

For the reasons stated, the decision of the trial court to terminate the parental rights of respondent is affirmed.

Affirmed.

McCULLOUGH and KNECHT, JJ., concur.