THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. REX BIRT, Defendant-Appellant.

Fourth District    No. 4—94—0448

Opinion filed September 15, 1995.

Daniel D. Yuhas and Lawrence J. Essig, both of State Appellate Defender's Office, of Springfield, for appellant.

Michael D. Clary, State's Attorney, of Danville (Norbert J. Goetten, Robert J. Biderman, and Jeffrey K. Davison, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In November 1993, defendant, Rex Birt, pleaded guilty to aggravated criminal sexual abuse (720 ILCS 5/12—16(c)(1) (West 1992)) pursuant to an agreement with the State that the trial court would sentence him to three years' probation, subject to various conditions. The court later imposed the recommended sentence.

In February 1994, the State filed a motion to amend the terms of defendant's probation by adding the condition that he undergo sex-offender counseling and cooperate with any recommendations the counselors might make. The State subsequently amended its motion again to include conditions that (1) defendant sign releases of confidentiality, enabling the probation office and the agency providing the counseling to communicate with each other; and (2) defendant not consume alcoholic beverages while on probation. Defendant objected to the State's motion, and the trial court conducted a hearing and granted it. Defendant appeals, arguing that (1) the State's Attorney had no statutory authority to file a motion to amend the conditions of defendant's probation; and (2) the trial court erred in allowing the State's motion in the absence of some showing of either a violation of probation or a change of circumstances necessitating a change in his probationary conditions.

We affirm.

## I. BACKGROUND

The aggravated criminal sexual abuse charge to which defendant pleaded guilty alleged that he committed an act of sexual conduct with N.L.G., a victim under 13 years of age when the act was committed. As a factual basis for defendant's plea of guilty, the prosecutor represented to the trial court that N.L.G. was 10 years old at the time of the incident, which occurred when she and her mother visited in defendant's home. On the date in question, N.L.G. thought defendant appeared drunk, and several times that day he "pawed" her, kissed her on the mouth using his tongue, and placed his hand underneath her skirt.

In February 1994, the State's Attorney filed a motion to amend the terms of defendant's probation. Defendant objected on the ground that the State's motion, which asked the trial court to impose more restrictive probationary conditions, was filed more than 30 days after sentencing. The court reserved ruling on that objection and conducted a hearing on the State's motion.

Defendant's probation officer, Mark Learnard, and Mary Lou Cooley, a program supervisor with the Center for Children's Services (CCS), the facility where defendant would receive counseling, both testified. Learnard said that at defendant's first interview, he made

no admission of guilt and gave Learnard the impression that he thought N.L.G. was responsible for what happened. During defendant's later visits with Learnard, defendant eventually acknowledged that he did put his hand between N.L.G.'s legs. Nonetheless, Learnard believed that defendant still was being manipulative, trying to protect himself, and not giving honest answers.

Learnard also discussed with defendant his need to avoid alcohol consumption, particularly in the presence of minors. Defendant ultimately agreed. Learnard then recommended that the conditions of defendant's probation be amended to require that he not consume alcohol and that he also undergo sex-offender counseling. Learnard deemed the latter condition "exceptionally important in the sense that the defendant still has some issues he has to work out." Learnard further stated that it was extremely important for him to exchange information with CCS to facilitate its counseling of defendant, as well as Learnard's probationary supervision.

Cooley, the CCS supervisor, testified that defendant exhibited characteristics typically displayed by sex offenders, such as feeling sorry for himself that he got caught and having very little empathy for the victim. She thought group counseling would be most effective for him because sometimes "[t]he other offenders help them work through some of their issues." She further explained that sex offenders can sometimes fool the general public, but they "can't buffalo other sex offenders." She also indicated that defendant's counseling would be more successful if she were allowed to communicate with Learnard.

The trial court took the State's motion under advisement, and in April 1994, entered an order granting it in full.

## II. STATE'S ATTORNEY'S AUTHORITY TO FILE A MOTION TO AMEND THE CONDITIONS OF PROBATION

■ Defendant first argues that the trial court committed reversible error in granting the State's Attorney's motion to modify the conditions of defendant's probation because the statute in question, section 5—6—4(f) of the Unified Code of Corrections (Code) (730 ILCS 5/5—6—4(f) (West 1992)) does not give the State's Attorney the authority to file such a motion. Section 5—6—4(f) of the Code provides as follows:

> "The conditions of probation, of conditional discharge and of supervision may be modified by the court on motion of the probation officer or on its own motion or at the request of the offender after notice and a hearing." (730 ILCS 5/5—6—4(f) (West 1992).)

Defendant asserts that the plain language of the statute is specific in

authorizing only the court, the probation officer, or the defendant to file a motion to modify probationary conditions. We disagree.

■ We first note that a motion to modify probation under section 5—6—4(f) of the Code is, by definition, a motion to modify a sentence the trial court has already imposed upon a convicted defendant. Thus, proceedings on such a motion constitute a continuation of the underlying criminal case in which the People of the State of Illinois were represented by the State's Attorney. The very first portion of section 3—9005 of the Counties Code, which describes the powers and duties of the State's Attorney, provides that the State's Attorney shall "commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his county, in which the people of the State or county may be concerned." (55 ILCS 5/3—9005(a)(1) (West 1992).) Because a motion to amend probation constitutes a continuation of a criminal case, the People of the State of Illinois continue to be represented by the State's Attorney in all proceedings concerning such a motion.

We suggest this point is so basic that the legislature did not deem it necessary to mention the State's Attorney as among those who could file a motion pursuant to section 5—6—4(f) of the Code. Instead, the legislature named the entities it did—the court, probation officer, or defendant—to specify that, *in addition to the State's Attorney*, entities who might normally not be thought of as empowered to file such a motion may in fact do so. However, because ours is an adversarial system—not an inquisitorial one—the State's Attorney must still participate as the representative of the interests of the People of the State of Illinois—the plaintiff in any criminal case—no matter who files the initial motion to bring the matter into court. In other words, once the motion is filed, the State's Attorney has total charge of the State's interests to the same extent as if he had filed the motion in the first place.

We find support for this holding in sections 5—13(1) and 1—6 of the Juvenile Court Act of 1987 (Act). (705 ILCS 405/5—13(1), 1—6 (West 1992).) Section 5—13(1) of the Act provides that "[a]ny adult person, any agency or association by its representative may file, or the court on its own motion may direct the filing through the State's Attorney of a [delinquency] petition." (705 ILCS 405/5—13(1) (West 1992).) Section 5—13(1) of the Act does not specify the State's Attorney as one of the entities who may file a delinquency petition, yet clearly the State's Attorney in fact files almost all such petitions. The State's Attorney's authority to do so is found in section 1—6 of the Act, which provides that "[t]he State's Attorneys of the several coun-

ties shall represent the people of the State of Illinois in proceedings under this Act in their respective counties." (705 ILCS 405/1—6 (West 1992).) We view the authority conveyed to the State's Attorney in section 1—6 of the Act as essentially the same as the authority conveyed to the State's Attorney in section 3—9005 of the Counties Code: that is, to represent the People of the State of Illinois in all criminal or juvenile proceedings in which the State may be interested.

In *In re Jennings* (1977), 68 Ill. 2d 125, 135, 368 N.E.2d 864, 869, the supreme court addressed an earlier version of section 1—6 of the Act and held as follows:

> "[T]he Juvenile Court Act specifically directs that it is the duty of the State's Attorney to represent the People in proceedings under the Act. (Ill. Rev. Stat. 1971, ch. 37, par. 701—21.) The Act clearly contemplates that a probation officer employed by the county [who has filed a petition under the Act] *** shall be represented by the local State's Attorney."

We interpret *Jennings* as holding that the State's Attorney is in charge of proceedings in a juvenile court matter once a petition is filed, just as the State's Attorney is in charge of proceedings under section 5—6—4(f) of the Code once a motion pursuant to that section is filed, no matter who filed it.

We find further support for our construction of section 5—6—4(f) in section 5—5—6(b) of the Code, which provides that if a defendant fails to pay restitution as directed, "the court may enter an order" directing the sheriff to take certain action to satisfy the restitution order. (730 ILCS 5/5—5—6(b) (West 1992).) We note that section 5—5—6(b) does not provide any specific authorization for the State's Attorney to file a petition asking the court to take such action, but we are confident that such authority is understood and that the court will not be taking such action *sua sponte.*

Last, we note that this court has twice construed section 5—6—4(f) of the Code as authorizing the State to file a petition to modify probation, and we adhere to those decisions. The first decision was *People v. Presley* (1979), 67 Ill. App. 3d 894, 897, 385 N.E.2d 181, 183, where we wrote that section 5—6—4(f) of the Code "provides that a term or condition of probation may be modified by the court either on its own motion at any time, or upon the request of the offender *or of the prosecution.*" (Emphasis added.) The second decision was *People v. Strickland* (1991), 211 Ill. App. 3d 183, 192, 569 N.E.2d 1202, 1207, where we implicitly concluded that the State's Attorney had authority to seek to modify the defendant's probation under section 5—6—4(f) by our affirming the trial court's modification pursuant to that section at the State's Attorney's request.

## III. TRIAL COURT'S GRANTING OF STATE'S MOTION TO MODIFY TERMS OF PROBATION

Defendant next argues that the trial court erred by allowing the State's motion to amend the terms of his probation because the motion was not based upon any change in conditions or in defendant's behavior since the original sentencing hearing. Defendant concedes that the supreme court decision in *People v. Tipton* (1981), 88 Ill. 2d 256, 430 N.E.2d 1023, authorizes the filing of motions to modify probation under section 5—6—4(f) of the Code more than 30 days after the sentencing hearing, but defendant argues that the trial court may not add burdensome probationary conditions not contained in the original order of probation when "there is no change in the status of the defendant requiring the harsher terms." We disagree.

In *Tipton*, the supreme court construed section 5—6—4(f) of the Code as vesting "the trial courts with authority to deal with changing conditions during the probation periods." (*Tipton*, 88 Ill. 2d at 264-65, 430 N.E.2d at 1027.) The supreme court further discussed modification of probation in *People v. Dinger* (1990), 136 Ill. 2d 248, 257, 554 N.E.2d 1376, 1379, wherein the court wrote the following: "[M]odification of probation may be made upon the petitioner's showing that there are sufficient reasons to warrant modification of the sentence."

■ In *Strickland* (211 Ill. App. 3d at 192-96, 569 N.E.2d at 1208-10), this court discussed section 5—6—4(f) of the Code at length and held as follows:

> "As opposed to a probation *revocation* proceeding, which implicates many of the procedural concerns of criminal due process [citations], the process due a defendant in a probation *modification* proceeding requires only 'notice and a hearing.' The State has neither the burden of going forward with the evidence nor of proving the desirability of the modification it may be seeking. ***
>
> * * *
>
> On appeal, the standard of review of a decision merely modifying a defendant's probation is whether the trial court's action constitutes an abuse of its discretion. *** We find that there was ample justification for the action taken by the trial court in modifying defendant's probation by placing her on [intensive probation supervision]. On this record, the trial court's action was not an abuse of discretion." (Emphasis in original.)

Based on the foregoing authority, we hold that the trial court may grant a motion to modify probation under section 5—6—4(f) of the Code, after notice and a hearing. Further, we specifically reject

defendant's argument that the basis for a modification must be either a change in conditions or in defendant's behavior since the original sentencing hearing. To so hold would be inconsistent with the remedial purposes of a probationary sentence and would unduly restrict the trial court as it seeks to use probationary conditions to achieve the defendant's rehabilitation. We conclude that interpreting section 5—6—4(f) of the Code as defendant urges would contradict the legislative intent to give trial courts the flexibility needed to make probation as meaningful and significant as possible.

Consistent with the standard of review stated in *Strickland*, we hold that the record before us demonstrates ample justification for the trial court's action in modifying defendant's probation, and that the trial court did not abuse its discretion in so ordering.

## IV. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

COOK and McCULLOUGH, JJ., concur.