611 N.E.2d 1356 (1993)
243 Ill. App.3d 631
183 Ill.Dec. 708
In re Destiny JACKSON, Don Jackson, and Cassandra Michelle Jackson, Minors (The People of the State of Illinois, Petitioner-Appellee, v. Gina Jackson Arrowood, Respondent-Appellant).
No. 5-91-0279.
Appellate Court of Illinois, Fifth District.
April 12, 1993.
Rehearing Denied May 10, 1993.
*1359 Edward Eytalis, Carterville, for respondent-appellant.
Charles Garnati, State's Atty., Marion, Norbert J. Goetten, Director, Stephen E. Norris, Deputy Director, Office of the State's Attorneys Appellate Prosecutor, Mt. Vernon, for petitioner-appellee.
JUSTICE WELCH delivered the opinion of the court:
Gina Jackson Arrowood, the mother of three children, Destiny, Don, and Cassandra, appeals from orders of the circuit court of Williamson County, filed March 25, 1991, which terminated her parental rights, adjudged the three children to be wards of the court, and appointed the guardianship administrator of the Illinois Department of Children and Family Services (hereinafter DCFS) guardian of the children with power to consent to their adoptions. For reasons which follow, we affirm.
We note initially that there was a separate court file with respect to each child. The proceedings with respect to Destiny and Don, who had the same father, were identical and were conducted simultaneously. The proceedings with respect to Cassandra, who had a different father than the other two children, differed only slightly early in the proceedings, but were later consolidated with the proceedings for Destiny and Don.
On August 30, 1988, petitions for adjudication of wardship were filed in the circuit court of Williamson County alleging that Destiny Jackson, a female minor born July 26, 1984, and Don Jackson, a male minor born September 26, 1985, were dependent pursuant to section 2-4(c) of the Juvenile Court Act in that they were under the age of 18 years and were without care necessary for their well-being through no fault, neglect, or lack of concern by their parents. (Ill.Rev.Stat.1987, ch. 37, par. 802-4(1)(c).) The petitions alleged that the minors were in the protective custody of DCFS and asked that the minors be adjudged wards of the court. The minors' mother, appellant herein, and father, Mitchell Jackson, were made parties-respondent to the petitions.
On that same date, a temporary custody hearing was held pursuant to section 2-9 of the Juvenile Court Act. (Ill.Rev.Stat.1987, ch. 37, par. 802-9.) Bercha Skelton testified that she is employed by the Illinois Department of Children and Family Services, and that she is familiar with the cases of Destiny and Don Jackson. Don is two years of age and Destiny is four years of age. Skelton had been working with the Jackson family for seven months, and both children were in the protective custody of DCFS. The father, Mitchell Jackson, had had legal custody of the children. On August 22, 1988, the father telephoned DCFS and indicated that he did not want the children any longer and was willing to sign voluntary surrenders of his parental rights to the children. At that time, the children were placed in the custody of appellant. On August 26, 1988, appellant contacted DCFS and indicated that she could not handle the children; they would not mind her, and she did not want custody of them. DCFS then took custody of the children. DCFS intended to retain custody of the children for a maximum of six months while appellant found a suitable place to live, continued counseling, and tried to work out some of her problems. The hope was that the children could be returned to their mother. DCFS wanted the court to grant an order giving it temporary guardianship of the children.
At the conclusion of this evidence, the court found that the allegations of the petitions were proved, and that there was an immediate and urgent need to provide shelter care for the children, and the court vested temporary custody of the children in DCFS. Appellant, who was present in court, made no objection to the proceedings or the order of the court. A written order was entered September 2, 1988, in which the court found that there was probable cause to believe the children were dependent, that there was an immediate and urgent *1360 need that the children be placed in protective custody for the protection of the children, and that reasonable efforts had been made to eliminate the need for removal of the children from their home. The court ordered that the children be placed in a shelter-care facility designated by DCFS, and DCFS was appointed temporary custodian and guardian of the minors. The matter was set for further proceedings on September 22, 1988.
The matter came on for further hearing on September 22, 1988, on a first appearance. Appellant was present in court, and upon indicating that she was not represented by an attorney and was on public aid, an attorney was appointed by the court to represent her in the proceedings pursuant to section 1-5 of the Juvenile Court Act. (Ill.Rev.Stat.1987, ch. 37, par. 801-5.) The matter was set for further proceedings on October 27, 1988.
On October 19, 1988, appellant, with her appointed counsel, appeared in court before Judge Haney to sign a "Final and Irrevocable Surrender to Agency for Purposes of the Adoption of a Born Child" relating to Destiny, Don, and Cassandra. Appellant's counsel represented to the court that he had discussed the surrenders with appellant. The court reviewed in detail with appellant the surrender forms. Appellant indicated that she understood the language of the forms. The court explained that the word "irrevocable" means that appellant cannot change her mind once she executes the forms. Appellant indicated she understood. The court also explained that the surrenders were permanent, and appellant indicated she understood. The court informed appellant that she would not be entitled to any notice of further court proceedings, including adoption proceedings, with respect to the children. When asked if she understood that she could never change her mind once she signed the surrenders and could never regain custody of her children, appellant indicated that she understood. The court asked appellant if anyone had made any threats or promises to her in order to induce her to sign the surrenders, and appellant responded negatively. Appellant indicated she was signing the surrenders of her own free will and volition. Appellant signed all three surrender forms in court, and her signature was witnessed by a representative of DCFS. The signed surrender forms for all three children were accepted by the court and delivered to DCFS.
On March 13, 1989, through her appointed counsel, appellant filed motions to modify or vacate the temporary custody orders entered September 2, 1988, with respect to Destiny and Don, alleging a material change in the circumstances of the family from which the minors were removed. The motions were filed pursuant to section 2-10(8) of the Juvenile Court Act. Ill.Rev. Stat.1989, ch. 37, par. 802-10(8).
These motions came on for hearing on April 12, 1989. Appellant testified that she is 22 years of age. She first became involved with DCFS when she called them for counseling regarding problems with her son, who was destructive. Someone from DCFS visited appellant's home, and that same evening, a representative from DCFS came to appellant's home and removed Destiny and Don. Appellant testified that the person who removed the children from the home had dated her mother and had also asked appellant on a date.
In August 1988, appellant was working at an Arby's restaurant. Appellant could not remember whether at that time she was living in a trailer or at her mother's house. At the time of this hearing, appellant was living with her husband in a twostory house which has a room for each child and a large yard. Appellant's husband, who is not the father of the children, is 24 years of age, and also wants appellant's children to live with them. Appellant's husband is employed and earns five dollars an hour, seven to nine hours a day, five or six days a week. Appellant is also employed and earns $75 to $100 a week. Appellant indicated that she would be willing to undergo counselling to learn better parenting skills.
On cross-examination by the State, appellant admitted that she had relinquished custody of the children at one time to her *1361 ex-husband, that he had relinquished custody to DCFS, who placed the children with appellant, and that appellant subsequently relinquished custody of the children to DCFS. Appellant also admitted that she had signed surrenders of her parental rights with respect to Don and Destiny. Appellant had married her present husband on March 13, 1989. If given custody of the children, appellant planned to leave them with her mother or mother-in-law while she was working.
Roger Norman from DCFS testified for the State that he first became involved in this case in January 1988 when the children were originally taken into protective custody. It was suspected that appellant had physically abused Don, who had bruising on his buttocks and face. Appellant had admitted that she had beaten Don. After a court hearing at that time, Destiny and Cassandra were returned to their mother; Don remained in the protective custody of DCFS. Appellant subsequently gave custody of Destiny to the father, who was also given custody of Don.
The matter was again brought before the court in August 1988 when appellant, who had regained physical custody of Destiny and Don, voluntarily turned them over to DCFS. Appellant signed surrenders of her parental rights to all three children on October 19, 1988. Norman had spoken with appellant on October 17, two days prior to her signing the surrenders. Appellant indicated that she had to relinquish rights to her children. She was in a very clear state of mind. Norman thoroughly discussed with her the implications and repercussions of signing the surrenders. Appellant understood that she would not be allowed visitation with the children. Appellant felt it was in the best interests of her children that she give them up because she could not provide an adequate home. Appellant was told that she could not change her mind once she signed the forms, even if her circumstances changed. Norman also testified that there was some indication that Destiny had been sexually abused, although the perpetrator was unknown. Both Destiny and Don are psychologically and emotionally damaged as a result of being moved from home to home. Appellant testified in rebuttal that she had originally reported to DCFS the suspected sexual abuse of Destiny.
After hearing argument, the court denied appellant's motions, finding that it was not in the best interests of the children to transfer custody to the mother. The court did not find that there had been a substantive change in the circumstances of the mother. At the conclusion of the hearing, the State indicated that it would be amending its petitions for adjudication of wardship to seek termination of appellant's parental rights based upon the surrenders she had signed.
On April 24, 1989, pursuant to section 2-14 of the Juvenile Court Act (Ill.Rev.Stat. 1989, ch. 37, par. 802-14), appellant filed demands that the adjudicatory hearing on the petitions for adjudication of wardship of Destiny and Don be held within 120 days.
On May 2, 1989, the State filed amended petitions for adjudication of wardship and appointment of guardian with power to consent to adoption of Destiny and Don. The petitions alleged that appellant had surrendered the minors to DCFS for adoption and thereby voluntarily terminated her parental rights to the minors and that the minors were thereby neglected and dependent. The petitions prayed that the minors be adjudged wards of the court, that the mother's parental and residual parental rights to the minors be forever terminated, and that DCFS be appointed guardian of the minors with the power to consent to their adoptions.
A similar petition for adjudication of wardship and appointment of guardian with power to consent to adoption was filed with respect to Cassandra on May 3, 1989. This petition alleged that Cassandra was a female minor born January 16, 1988.
The matter came on for pretrial hearing on May 4, 1989. The matter was set for first appearance on the petitions on June 15, 1989. At that hearing, all three cases were set for adjudicatory hearing on August 14, 1989. This adjudicatory hearing *1362 was continued several times before it was finally held on March 22, 1991.
On June 15, 1989, appellant filed motions for a transcript of the evidentiary hearing held April 12, 1989, on her motions to modify or vacate the temporary custody orders. These motions were granted on August 14, 1989.
On October 11, 1989, the State filed motions for a transcript of the hearing on the signing and acknowledgement of the irrevocable surrenders and consents to adoptions, held October 19, 1988, for the reason that appellant was contesting the surrenders. These motions were granted on December 4, 1989.
On November 6, 1989, appellant filed motions to dismiss the amended petitions for adjudication of wardship and appointment of guardian with power to consent to adoption with respect to Destiny and Don for the reason that appellant was contesting the surrenders of parental rights and because the petitions failed to allege any facts indicating that appellant was an unfit parent. A similar motion to dismiss the petition for adjudication of wardship and appointment of guardian with power to consent to adoption was filed with respect to Cassandra on November 7, 1989.
On December 5, 1989, appellant filed motions for a transcript of the temporary custody hearing. These motions were granted on December 20, 1989.
Also on December 5, 1989, appellant filed motions to modify the temporary custody orders entered September 2, 1988, with respect to Destiny and Don for the reasons that there had been a material change of circumstances of the family from which the minors were removed and it was no longer a matter of immediate and urgent necessity that the minors remain in shelter care. On December 19, 1989, the State filed motions to dismiss the appellant's motions to modify the temporary custody orders for the reason that they state only legal conclusions with no factual basis.
On December 19, 1989, appellant filed applications for the restoration of all three minors to the custody of the mother pursuant to section 2-28(3) of the Juvenile Court Act. (Ill.Rev.Stat.1989, ch. 37, par. 802-28(3).) The applications alleged that there had been no finding of neglect or abuse, the surrenders of parental rights had been obtained in violation of the law, and said surrenders of parental rights were void, in violation of the law and due process guarantees of the United States and Illinois constitutions.
The matter came on for hearing on December 19, 1989. At this hearing, the State pointed out the need to proceed speedily to an adjudicatory hearing given the mother's filing of demands to start time. The court held that, as a matter of law, any further delays are occasioned by appellant in that she had requested certain information and discovery.
On February 21, 1990, written orders were entered as to the matters decided at the hearing of December 19, 1989. The court denied mother's motions to dismiss the petitions for adjudication of wardship and appointment of guardian with power to consent to adoption, but the court granted mother leave to challenge the validity of the purported surrenders of parental rights upon which those petitions were based. The court found that appellant's applications to restore the minors to the custody of their mother failed to contain sufficient facts to apprise the State of the nature of the claims asserted and were therefore dismissed with leave to amend. Appellant withdrew her motions to modify temporary custody orders entered September 2, 1988, and, to the extent they were not withdrawn, they were denied.
On March 22, 1990, appellant filed motions for extension of time in which to file amended applications for restoration of the minors to the custody of the mother.
On March 30, 1990, appellant filed motions to strike the purported surrenders of parental rights from the pleadings in this cause and to dismiss those petitions. The motions allege that: (a) contrary to statute and administrative rule, DCFS did not have a case plan recommending the termination of appellant's parental rights or recommending that it would be in the best interests *1363 of the minors if they were permanently removed from the custody of their mother; (b) contrary to due process and administrative rules, none of the procedural safeguards mandated by law and fundamental fairness were followed prior to appellant being brought into court to sign away her parental rights; (c) prior to bringing appellant into court to sign away her parental rights, DCFS knew that appellant was sleep-deprived, agitated, and upset, and that knowingly exerted undue influence upon her such that when she stepped into the courtroom prior to signing away her parental rights, she was not exercising free will and the act of signing the surrenders was not a free and voluntary act; (d) the purported surrenders are invalid because they were obtained in violation of State and Federal law, in violation of appellant's civil and constitutional rights, and they were obtained by undue influence, thereby rendering said purported surrenders null and void; and (e) absent the invalid purported surrenders upon which the petitions for adjudication of wardship and appointment of guardian with power to consent to adoption were based, said petitions cannot stand alone, and they fail to state a cause of action. Wherefore, the motions prayed that the surrenders be stricken from the petitions and that said petitions be dismissed.
On April 2, 1990, the State filed an objection to this motion alleging that the motion alleged no fraud or duress on the part of the person taking the surrenders or on the part of adoptive parents or their agents, as required by section 11 of the Adoption Act (Ill.Rev.Stat.1989, ch. 40, par. 1513) in order to invalidate a surrender. The objection further alleges that appellant approached DCFS and asked to surrender her children, and that DCFS exerted no undue influence upon her to do so. We note that this objection appears only in the court file relating to Cassandra Jackson. It is captioned for all three cases, however, and mother filed responsive pleadings to it in all three cases.
Also on March 30, 1990, pursuant to section 2-14(c) of the Juvenile Court Act (Ill. Rev.Stat.1989, ch. 37, par. 802-14(c)), appellant filed motions to dismiss the amended petitions with respect to Destiny and Don for failure to provide an adjudicatory hearing thereon within 120 days after the filing of her demands for hearing. On April 4, 1990, the State filed objections to these motions, alleging that appellant herself had moved for a continuance of the adjudicatory hearing on August 14, 1989, over the objection of the State, that on every court appearance appellant had asked for additional discovery and for a continuance over the State's objection, and that all delays had been due to motions filed by appellant and to her own counsel's unpreparedness. On April 27, 1990, appellant filed responses to the State's objections, alleging that the record did not support an allegation that she had sought and obtained continuances over the State's objection, that there had been no continuance sought or obtained under section 2-14 of the Juvenile Court Act (Ill.Rev.Stat.1989, ch. 37, par. 802-14), and that there had not been an adjudicatory hearing held within 120 days of appellant's demands.
The cause came on for hearing on May 24, 1990, on appellant's motions to dismiss because no adjudicatory hearing had been held within 120 days of her demand for hearing. After hearing argument and reviewing the files, the court denied the motions to dismiss. The court found that the delays involved had been occasioned by appellant through the filing of multiple motions. The 120-day period would have run on August 22, 1989. The adjudicatory hearing was initially set for August 14, 1989. On June 15, 1989, appellant filed a motion for a transcript; on August 14, 1989, appellant filed a request for production. The court found that at every opportunity for an adjudicatory hearing, appellant had filed a motion requiring an extension of time. The court acknowledged that it had not followed the procedures for continuances set forth in the Juvenile Court Act. However, it was appellant who had sought continuances and failed to follow the Act in doing so. Written orders were entered May 25, 1990.
*1364 On December 19, 1990, appellant filed second applications for restoration of all three minors to the custody of mother, alleging that there had been no finding of neglect or abuse and that her surrenders of parental rights had been obtained through fraud and duress and were void ab initio.
Appellant's third applications for restoration of the minors to the custody of mother were also filed. Although they were file-stamped December 21, 1990, a hearing was held on these applications on December 20, 1990. The applications allege that there had been no finding of abuse or neglect. They also allege that appellant's purported surrenders of parental rights were obtained by fraud and duress and were not an exercise of her free will. The fraud and duress occurred as follows: (1) during her meeting with a representative of DCFS, she was advised that she had 90 days in which to revoke her surrenders of parental rights; when she attempted to revoke the surrenders within 90 days, she found she was unable to do so; (2) appellant's surrenders were the result of many months of unethical pressures by DCFS calculated to result in overpowering her free will and culminated in securing the final and irrevocable surrenders of her parental rights; (3) after discovering that at least one of her children had been sexually abused by her ex-husband, appellant was told by representatives of DCFS that the only way she could halt court-ordered visitation between the children and their father and obtain sexual-abuse counseling for the children was by surrendering her parental rights; and (4) appellant surrendered her parental rights only weeks after a suicide attempt, and DCFS encouraged appellant's surrenders knowing of the suicide attempt and appellant's diminished capacity due to her emotional instability.
The matter came on for hearing on December 20, 1990, on appellant's third applications for restoration of the minors to her custody and on the State's petitions for adjudication of wardship and appointment of guardian with power to consent to adoption. Prior to hearing evidence, the court ruled that no fraud or duress had been alleged on the part of Judge Haney, before whom the surrenders were signed and acknowledged, nor were there any adopting parents or agents of adopting parents involved. Section 11 of the Adoption Act (Ill.Rev.Stat.1989, ch. 40, par. 1513) requires that, to invalidate a surrender, the fraud or duress must be on the part of the person taking the surrender or the adopting parents or their agents. However, pursuant to Regenold v. Baby Fold, Inc. (1977), 68 Ill.2d 419, 12 Ill.Dec. 151, 369 N.E.2d 858, appellant would be allowed to present evidence relating to "extreme circumstances" to determine whether such circumstances existed sufficient to invalidate the surrenders.
Appellant testified that she is married and is employed part-time as a cab driver. She was pressured to execute the surrenders of parental rights by DCFS. She was constantly being investigated by DCFS, and DCFS would not let her put her children in therapy. Appellant initiated her first contact with DCFS when she telephoned them to request family counseling for problems she was having with the children. That night, DCFS removed the children from her home. After a court appearance, appellant regained custody of Destiny and Cassandra, but DCFS retained custody of Don.
Dick Pierson is the DCFS employee who removed the children from the home. Pierson had dated appellant's mother. After the children had been removed from the home, appellant saw Pierson at a tavern. He asked her to dance. She felt that he was coming on to her. After the children were removed, appellant attended counseling. She also took part in a program known as "Project 12 Ways" to learn parenting skills. She objected to this program for various reasons, but DCFS threatened to keep her children if she did not continue in it.
Appellant reported to DCFS that Destiny had been sexually abused. DCFS agreed that sexual abuse was indicated but would not allow appellant to get counseling for Destiny. Appellant suspected that Destiny had been abused by her father during visitation. Appellant was told by DCFS that *1365 the only way she could terminate this visitation was to surrender the children for adoption and have the father's parental rights terminated as well.
Appellant testified that the homemaker provided by DCFS would come to her house at 9:30 or 10:00 at night and tell appellant to watch everything she did because DCFS was watching her. The homemaker indicated that DCFS might even have somebody outside appellant's house watching her. This was within one month of appellant signing the surrenders. Appellant attempted suicide one week prior to signing the surrenders. The suicide attempt was a result of the problems appellant was having with DCFS. Appellant felt that DCFS was harassing her, calling her at work, telling her she was a bad mother one day and then telling her the next day that she was a good mother. DCFS was intruding in her life. After the suicide attempt, appellant was admitted to the hospital for a few hours. One week after she got out of the hospital, appellant called DCFS and reported that she did not want to send the children for visitation with their father anymore, that DCFS was going to take the children from her anyway, so she might as well sign the surrender forms because that was the only way DCFS was going to leave her alone. Appellant made sure that if she signed the surrenders the children would be placed in counseling.
Appellant went to the DCFS office to discuss the surrenders and met with Roger Norman. Norman told her that the children's father would not get to visit with the children and his parental rights would be terminated. Norman told appellant that she would have 90 days in which to change her mind. At the time appellant signed the surrenders in court, she believed that she had 90 days in which to change her mind. Appellant was hoping that within those 90 days the father's parental rights would be terminated and then she could get the children back with no fear of visitation by the father. Appellant would not have signed the surrender forms if she had not believed that she had 90 days to change her mind.
Appellant testified that she first met with legal counsel the morning of her court appearance to sign the surrender forms. Counsel did not discuss with appellant the surrender forms at all. Appellant did not discuss with counsel whether she had 90 days in which to change her mind. Appellant could not remember what occurred in court because her emotional state was not very good. She stated that she was too busy crying to understand what was going on.
Appellant changed her mind about the surrenders in early November, and she so advised her counsel. Appellant would not have given up the children if not for the problems she had with DCFS.
On cross-examination by the State, appellant testified that the children had been removed from her home initially because Don had been beaten and had a bruise on his bottom. Appellant had admitted in court that the children were neglected and had agreed to participate in the 12 Ways program.
On cross-examination by the children's guardian ad litem, appellant testified that she initiated the first contact with DCFS because she was having problems with the children. After the court returned Destiny and Cassandra to appellant, she delivered custody of Destiny to her ex-husband, Destiny's father. The children were eventually returned to appellant when their father turned them over to DCFS and DCFS asked appellant if she would take custody of them. This was just two weeks before appellant signed the surrenders. Appellant only kept the children a week or two before returning them to DCFS. DCFS did not request appellant to return the children, nor did DCFS come to her home and take the children. On the day appellant signed the surrenders, she had already given DCFS physical custody of all three of her children. Appellant testified that she could not remember the court proceedings on the day she signed the surrender-of-parentalrights forms. All appellant knew was that when the judge asked her questions, she was to say yes. Appellant thought that observers in the courtroom that day, including *1366 the judge, should have been able to see that she was upset and distraught. DCFS told appellant that if she signed the surrenders, the children's visitation with their father would terminate, and the children would get counseling and would have a better life.
Appellant's mother, Sandra Self, testified that in September 1988, appellant was very upset about the children's situation and her problems with DCFS. As a result, appellant attempted suicide that month. Appellant's main motivation in surrendering the children to DCFS was to keep her ex-husband from having them. Appellant told Self that DCFS told her that if she changed her mind, she could get the children back, and if she signed the surrender forms, her ex-husband could not see the children.
Appellant rested. At this point, the State moved for dismissal of the applications for restoration of minors to custody of mother, or for judgment in its favor, for the reason that appellant had failed to carry her burden of proof by clear and convincing evidence.
The court, viewing the evidence in the light most favorable to appellant, found that appellant had not carried her burden of proving fraud or duress on the part of the judge before whom the surrenders were signed and acknowledged or any fraud or duress by any adopting parents or their agent. The court found that DCFS is not an agent of any adopting parents, but that even if it was, appellant still had not shown any fraud or duress on the part of DCFS. Finally, the court found that appellant had not shown by clear and convincing evidence that an extreme situation, as discussed in Regenold, existed. The court granted the State's motion for a judgment in its favor for the reason that appellant had failed to carry her burden of proof.
On January 8, 1991, a written order was entered in accordance with the court's oral pronouncement. This order found that the irrevocable surrenders appellant had signed were valid and noted that appellant had thereby waived further appearance and notice with respect to any other proceedings involving the children. Notice of appeal from this order was filed January 11, 1991. On motion of the State, this appeal was dismissed by order of the appellate court for lack of an appealable order.
On March 22, 1991, an adjudicatory hearing was finally held on the State's petitions for adjudication of wardship and appointment of guardian with power to consent to adoption with respect to all three children. The birth certificates of the children were admitted into evidence. The court agreed to take judicial notice of prior proceedings in which appellant had signed irrevocable surrenders of her parental rights to the children, and the court had found those surrenders to be valid. The court heard evidence regarding the fathers of the children. The court thereupon adjudged the children to be wards of the court, terminated the parental rights of all parents, and appointed the guardianship administrator of DCFS guardian of each of the children with power to consent to their adoptions.
On March 25, 1991, an order was entered terminating the parental and residual parental rights of appellant and appointing the guardianship administrator for the Illinois Department of Children and Family Services guardian of the minors with the power to consent to the adoption of the minors. On April 22, 1991, appellant filed a notice of appeal from this order. Thus stands the case now before us on appeal.
Appellant's first argument on appeal is that the trial court erred when it denied her motions to dismiss the amended petitions for adjudication and appointment of guardian with power to consent to adoption for failure to hold an adjudicatory hearing within 120 days of her demands to start time filed pursuant to section 2-14(b) of the Juvenile Court Act. (Ill.Rev.Stat. 1989, ch. 37, par. 802-14(b).) That section provides that when a petition is filed alleging that a minor is abused, neglected, or dependent, an adjudicatory hearing shall be held within 120 days of a written demand to start time made by any party-respondent. In the instant case, appellant filed such a demand to start time with respect to Destiny and Don on April 24, 1989. The adjudicatory hearing was not actually held *1367 until March 22, 1991, admittedly more than 120 days after the filing of the demands to start time. (No demand to start time was filed with respect to Cassandra.) Section 2-14(c) provides that if the adjudicatory hearing is not heard within the time limits provided, upon motion by any party for whom a demand to start time was made, the petition shall be dismissed with prejudice. (Ill.Rev.Stat.1989, ch. 37, par. 802-14(c).) Mother filed such a motion to dismiss on March 30, 1990, which was denied by order of the trial court dated May 25, 1990.
Appellant argues that the trial court erred in denying her motions to dismiss because, although section 2-14 of the Juvenile Court Act allows for continuances of the 120-day period, no such continuance was sought or obtained by any party. Appellant admits that she did file motions for transcripts on June 15, 1989, and requests for production on August 14, 1989, the date the matter was set for adjudicatory hearing, but argues that the court erred by rescheduling the adjudicatory hearing without a record of the reasoning therefor and by initially scheduling the adjudicatory hearing only eight days before the 120-day deadline. Appellant argues that due to the inordinate delay, she was deprived of the society of her children for an unjustified period before an adjudicatory hearing.
The State responds that after signing the voluntary surrenders of her parental rights, appellant had no right to further participate in proceedings on the amended petitions for adjudication and appointment of guardian with power to consent to adoption, and that she had no right to file a demand to start time or to move to dismiss the amended petitions for failure to hold a timely adjudicatory hearing. We think that although appellant may not have been a party-respondent to an action under the Adoption Act, appellant remained a party-respondent to the proceedings under the Juvenile Court Act even after she had signed the final and irrevocable surrenders of her parental rights and until such time as those parental rights were terminated by a court of law. We note that neither the State, the guardian ad litem, nor the trial court at any time objected to appellant participating in the juvenile proceedings after she signed the surrender forms, and indeed, all parties and the trial court acted as though appellant remained a party-respondent. Accordingly, we find that appellant had standing to file demands to start time and subsequent motions to dismiss the amended petitions for failure to hold a timely adjudicatory hearing.
Section 2-14(c) of the Juvenile Court Act provides that continuances from the 120-day time limit may be granted upon written motion of a party or upon the court's own motion, for good cause shown, but only for 30-day periods. A period of continuance temporarily suspends, for the time of the delay, the period within which a hearing must be held. (Ill.Rev.Stat.1989, ch. 37, par. 802-14(c).) Section 2-14(d) of the Juvenile Court Act provides that the time limits may be waived only by consent of all parties and approval of the court. Ill.Rev. Stat.1989, ch. 37, par. 802-14(d).
At the hearing on appellant's motions to dismiss, the trial court pointed out that no written motion for continuance had been filed by any party pursuant to section 2-14(c). Nor does it appear from the record that continuances were granted on the court's own motion for 30-day periods and for good cause shown, as allowed by section 2-14(c). However, the court found that every delay in the setting of the adjudicatory hearing had been occasioned by appellant. The record on appeal supports this finding. Accordingly, the trial court denied appellant's motion to dismiss. We find no error in this decision. We do not think appellant can complain of delays which she occasioned. Section 2-14(d) provides that the time limits established in section 2-14 may be waived by consent of all parties and approval of the court. We find that this is precisely what occurred in the instant case. By repeatedly filing motions requiring extensions of the 120-day time limit, appellant effectively waived that time limit. By rescheduling the adjudicatory hearing to accommodate appellant, the court approved the waiver of the time limit. While the record indicates that the State *1368 may have objected to continuances of the adjudicatory hearing, we do not think the State's objections, given the posture of this appeal, obviate the waiver of the time limit by appellant and approval by the court. We note that the adjudicatory hearing was originally scheduled within the 120-day time limit. The trial court did not err in denying appellant's motions to dismiss with prejudice the amended petitions for adjudication of wardship and appointment of guardian with power to consent to adoption for failure to hold a timely adjudicatory hearing.
Appellant's next argument on appeal is that the trial court erred in denying her third applications for restoration of the minors to custody of the mother based on the invalidity of the surrenders which she signed. Appellant argues that the trial court's finding of no fraud or duress on the part of DCFS which induced appellant to sign the irrevocable surrenders is against the manifest weight of the evidence; that the trial court's finding that appellant had failed to establish, by clear and convincing evidence, extreme circumstances surrounding execution of the surrenders that would warrant the exercise of the court's equity jurisdiction in invalidating those surrenders was against the manifest weight of the evidence; and that the trial court erred in excluding evidence of an agency relationship between DCFS and adopting parents and then concluding that DCFS was not an agent of adopting parents.
Section 11 of the Adoption Act provides as follows:
"A consent to adoption by a parent, including a minor, executed and acknowledged in accordance with the provisions of Section 8 of this Act, or a surrender of a child by a parent, including a minor, to an agency for the purpose of adoption shall be irrevocable unless it shall have been obtained by fraud or duress on the part of the person before whom such consent, surrender, or other document equivalent to a surrender is acknowledged pursuant to the provisions of Section 10 of this Act or on the part of the adopting parents or their agents and a court of competent jurisdiction shall so find. No action to void or revoke a consent to or surrender for adoption, including an action based on fraud or duress, may be commenced after 12 months from the date the consent or surrender was executed. The consent or surrender of a parent who is a minor shall not be voidable because of such minority." (Ill.Rev. Stat.1989, ch. 40, par. 1513.)
Because appellant failed to challenge the validity of her surrenders for adoption within 12 months of their execution, we affirm the decision of the trial court denying her third applications for restoration of the minors to custody of the mother.
Appellant executed the surrenders on October 19, 1988. She did not in any way challenge the validity of these surrenders until November 6, 1989, when she filed motions to dismiss the petitions for adjudication of wardship and appointment of guardian with power to consent to adoption. These motions, filed in the juvenile proceedings, alleged that the purported surrenders of parental rights obtained by DCFS were contested by appellant, but the motions did not allege any factual basis for the challenge. Subsequent pleadings, of course, allege appellant's factual basis for her challenge to the validity of the surrenders.
In In re Adoption of Baby Girl Mandell (1991), 213 Ill.App.3d 670, 157 Ill.Dec. 290, 572 N.E.2d 359, it was held that where a mother did not challenge the validity of her consent to adoption within the prescribed 12-month period, she was barred from attempting to establish that the consent was void. In that case, mother filed a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure seeking to vacate a judgment of adoption on the ground that it was void because based on an invalid consent. Section 2-1401 of the Code of Civil Procedure allows two years in which to bring such an action. (Ill.Rev.Stat. 1989, ch. 110, par. 2-1401.) The action was brought more than two years after the consent to adoption was signed but within two years of the judgment of adoption. The court on appeal *1369 held that the one-year limitation in the Adoption Act for challenging consents to adoption overrode the two-year limitation of the Code of Civil Procedure for challenging judgments. All of the mother's contentions were premised on her allegation that the consent to adoption was invalid. However, a challenge to the validity of the consent to adoption must be brought within 12 months of its execution. The mother's failure to attack the validity of the consent to adoption within this period was fatal to her attempt to attack the judgment, regardless of the means utilized. If the consent could not be challenged, then the mother's arguments based on the invalidity of the consent must necessarily fail.
Similarly, in the instant case, appellant did not challenge the validity of her surrenders for adoption until more than 12 months after their execution and acknowledgement. Any contentions based upon the invalidity of those surrenders were, therefore, barred, even if made in the context of the juvenile proceedings in motions to dismiss the petitions for adjudication or in applications for restoration of the minors to the custody of the mother. Because appellant is barred from challenging the validity of the surrenders for adoption by the 12-month limitation period of section 11 of the Adoption Act, the trial court did not err in denying appellant's third applications for restoration of the minors to custody of the mother.
In any event, we do not think the trial court erred in finding that there was no agency relationship between DCFS and the adopting parents or that its findings that DCFS had engaged in no fraud or deceit, or that no extreme circumstances existed, are against the manifest weight of the evidence. According to section 11 of the Adoption Act, a surrender of a child by a parent to an agency for the purpose of adoption shall be irrevocable unless it shall have been obtained by fraud or duress on the part of the person before whom such surrender is acknowledged or fraud or duress on the part of the adopting parents or their agents. In the instant case, the surrenders for adoption were acknowledged before Judge Haney in the circuit court of Williamson County. Appellant has at no time alleged any fraud or duress on the part of Judge Haney in the execution and acknowledgement of these surrenders, nor would the record support any such allegation. It is apparent then, that in order to revoke her surrenders for adoption, appellant must prove fraud or duress on the part of the adopting parents or their agents. Because fraud or duress on the part of third parties other than the adopting parents or their agents does not invalidate a surrender (Kathy O. v. Counseling & Family Services (1982), 107 Ill.App.3d 920, 927, 63 Ill.Dec. 764, 770, 438 N.E.2d 695, 701), fraud or duress on the part of DCFS is only relevant if DCFS was an agent of adopting parents. We will, therefore, first address appellant's arguments relating to the issue of whether such an agency relationship existed.
Appellant first contends that the trial court erred in excluding evidence of an agency relationship between DCFS and adopting parents. At the hearing on appellant's third applications for restoration of minors to custody of mother, held December 20, 1990, the State objected to appellant introducing evidence of the totality of the circumstances surrounding her decision to surrender her children for adoption. A discussion ensued regarding whether such evidence was admissible to show extreme circumstances as discussed in Regenold. After a brief recess to review the law, the court ruled as follows:
"The statute requires that the fraud or duress is limited to the person before whom such consent, surrender, equivalent document is acknowledged pursuant to the act or on the part of the adopting parents or their agents. Obviously the allegations that [appellant's counsel] has [sic] filed on behalf of his client and are pending before this Court do not go to any fraud or duress on the part of Judge Haney, before whom the surrender was taken. There is no allegation concerning any adopting parents or their agents. So, I don't think any of the allegations that have been raised fall within the purview *1370 of the statute. However, the Supreme Court case upon which the State relies does leave open a door concerning extreme circumstances * * *. I am going to allow [appellant] to proceed at this point to see if it does fall within that or not."
Appellant's counsel objected to the court's ruling that DCFS is not the equivalent of the adopting parents. Counsel stated: "because we have no adoptive parents, we have D.C.F.S. who is taking custody, that they would stand, in essence, equivalent to adoptive parents." The court rejected appellant's argument. It is apparent that appellant did not contend before the trial court that DCFS was an agent of adopting parents but argued that DCFS was the equivalent of adopting parents. Appellant admitted that there were, in fact, no adopting parents. Appellant's argument to this court that she was denied the opportunity to present evidence of an agency relationship is disingenuous because the record clearly shows that appellant did not seek to present such evidence to the trial court. Appellant's third applications for restoration of the minors to custody of the mother did not contain any allegation that DCFS was an agent of adopting parents. The issues in a case are created by the pleadings and allegations, to which the proof must correspond, and a party cannot have relief under proof without allegations. (Partel, Inc. v. Harris Trust & Savings Bank (1982), 106 Ill.App.3d 962, 966, 63 Ill.Dec. 303, 306, 437 N.E.2d 1225, 1228.) Appellant's pleadings contained no allegation upon which to base a claim of an agency relationship between DCFS and adopting parents. Thus, to the extent the trial court excluded evidence of any such relationship, we find no error.
In any event, appellant as much as conceded before the trial court that DCFS was not an agent of adopting parents where her counsel stated that there were no adopting parents. It goes without citation of authority that there can be no agency relationship in the absence of a principal. (See In Interest of Nolan (1981), 94 Ill.App.3d 1081, 1088, 50 Ill.Dec. 442, 447, 419 N.E.2d 550, 555 (the appellate court noted that at the time of execution of the surrender, prospective adoptive parents for the child had not yet been selected and therefore the question of whether fraud or duress was present must be limited to the person before whom the surrender was acknowledged and not to the adopting parents or their agents).) Thus, the trial court's finding that DCFS was not an agent of the adopting parents was not erroneous and was not against the manifest weight of the evidence.
In any event, the trial court found, and we agree, that, even assuming DCFS was acting as an agent of adopting parents, appellant failed to prove that DCFS obtained the surrenders through fraud or duress. One seeking to invalidate a surrender for adoption must prove by clear and convincing evidence that its execution was procured by fraud or duress. (Regenold v. Baby Fold, Inc. (1977), 68 Ill.2d 419, 432, 12 Ill.Dec. 151, 157, 369 N.E.2d 858, 864.) The court in Regenold defined duress as a wrongful act or wrongful threat by one person which induces another person to enter into a transaction under circumstances which will deprive him of the exercise of his free will. There must be such compulsion that the execution of the instrument is not the voluntary act of the maker. Any wrongful threat which actually puts the victim in such fear as to act against his will constitutes duress. Mere annoyance or vexation, or advice, argument or persuasion does not constitute duress if the individual acts freely when he executes the questioned document. Regenold, 68 Ill.2d at 433, 12 Ill.Dec. at 157, 369 N.E.2d at 864.
Regenold defined fraud as anything calculated to deceive, whether a single act or a combination of circumstances, whether the suppression of truth or the suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or by silence, by word of mouth or by look or gesture. Fraud implies a wrongful intent. In order to constitute fraud, a misrepresentation must consist of a statement of material fact, false and *1371 known to be so by the party making it, made to induce the other party to act, and in acting the other party must rely on the truth of the statement. Regenold, 68 Ill.2d at 435-36, 12 Ill.Dec. at 158, 369 N.E.2d at 865.
Reviewing the evidence presented at the hearing on appellant's third applications for restoration of the minors to custody of the mother, it appears that most of that evidence related to what the appellant claims are the extreme circumstances which compelled her to execute the surrenders. Very little of the evidence presented went to actual fraud or duress on the part of DCFS. We must remember that, in order to invalidate the surrenders, the fraud or duress must be the result of a wrongful act and not a lawful act. Thus, the fact that DCFS lawfully removed appellant's children from her home, or asked her to participate in programs such as 12 Ways prior to return of the children, cannot qualify as wrongful fraud or duress.
Appellant testified that she was pressured by DCFS to execute the surrenders, that she was constantly being investigated, and that DCFS would not allow her to put her children in counseling. Appellant was told by her homemaker that DCFS was watching everything she did. DCFS was intruding in her life. Mere annoyance or vexation does not constitute duress.
DCFS told appellant that the only way she could prevent further sexual abuse of Destiny by her father was to surrender the children for adoption and the father's parental rights would be terminated. No evidence was presented that this was a misrepresentation or that, if it was, it was made with the intent to deceive appellant. A representative of DCFS told appellant that she would have 90 days after signing the surrenders in which to change her mind. Although appellant testified that she could not remember what occurred in court on the day she signed the surrenders, the evidence indicates that the surrenders were executed before, and acknowledged by, a judge, who discussed the surrenders with her, including the fact that the surrenders were irrevocable. Given the trial court's admonitions, appellant has failed to prove by clear and convincing evidence that she was induced by fraud to sign the surrenders. Finally, the evidence clearly shows that appellant initiated the contact with DCFS which led to execution of the surrenders when she told her DCFS homemaker that she had decided to surrender the children; DCFS did not initiate the contact which led to the surrenders. The trial court's finding that appellant failed to prove fraud or duress on the part of DCFS by clear and convincing evidence is not against the manifest weight of the evidence.
The cases relied upon by appellant, People ex rel. Karr v. Weihe (1961), 30 Ill. App.2d 361, 174 N.E.2d 897, and People ex rel. Buell v. Bell (1959), 20 Ill.App.2d 82, 155 N.E.2d 104, in which surrenders were invalidated because the mothers had been under the mistaken belief that they had a certain time period in which to change their minds, are distinguishable on their facts from the case at bar. In both those cases, the mothers had recently given birth and were under the care of a physician and were medicated, and the surrenders were not read or explained to the mothers and were not acknowledged before a judge who explained the surrenders. In the instant case, appellant was under no disability, the surrenders were repeatedly read and explained to appellant prior to execution by both representatives of DCFS and the trial court, and they were acknowledged before the trial court.
Finally, appellant argues that the trial court's finding that there were no extreme circumstances to warrant the court's exercise of its equity power in invalidating the surrenders is against the manifest weight of the evidence. Appellant takes the position that the court in Regenold created an exception to the statute's limitation on irrevocability of surrenders only in situations of fraud or duress on the part of the one taking the surrender or the adopting parents or their agents by allowing courts to consider fraud or duress on the part of third parties in certain "extreme situations".
*1372 In Regenold, the trial court found invalid a consent to adoption, basing its decision on the presence of duress in the totality of the circumstances leading up to and surrounding the execution of the consent. The supreme court held, however, that the 1973 amendment to section 10 of the Adoption Act (Ill.Rev.Stat.1973, ch. 4, par. 9.1-11), which requires that the fraud or duress be on the part of the person before whom the consent or surrender is acknowledged or on the part of the adopting parents or their agents, is a repudiation by the legislature of the "totality of the circumstances" approach. The court held that the same rule should apply to revocation or rescission of consents to adoption as applies to the remedy of rescission in other areas of the law, that is, that the validity of the contract is not affected by the fact that its execution was induced by duress practiced by a third party.
The mother in Regenold argued that it is immaterial from what source the influence or duress stems and posited a hypothetical situation wherein the natural father threatens to kill both the child and mother unless she surrenders the child for adoption. The mother argued that under the court's new rule, a consent to adoption executed under these circumstances would not be revocable. The supreme court responded that while no such extreme factual situation was present in the case before it, the court was confident that a court faced with the extreme situation hypothesized, in the exercise of its equity authority, would be able to protect the interests of all parties.
We do not think the supreme court by this language intended to create an exception to the statutory limitation on revocability of consents or surrenders for adoption akin to the "totality of the circumstances" approach. Indeed, the supreme court explicitly rejected this approach in Regenold. Yet this is precisely what appellant in the case at bar asked the trial court to do and now asks this court to do. The evidence appellant presented at the hearing on her third applications for restoration of the minors to custody of the mother related to the totality of the circumstances in an attempt to show duress and fraud on the part of third parties surrounding her execution of the surrenders. The evidence did not go to some "extreme situation" such as that hypothesized in Regenold.
Appellant argues in her brief that an extreme situation like that hypothesized in Regenold exists in the case at bar where appellant's daughter was subjected by her father to the threat of sexual abuse and DCFS offered no protection. Even were we to recognize this as an "extreme situation" such as that hypothesized in Regenold, appellant has not demonstrated by clear and convincing evidence that any such threat of sexual abuse by the father existed or that, if it did, appellant was foreclosed from any options other than surrendering her children, so that the threat of sexual abuse was sufficiently compelling to constitute duress. Furthermore, as the State points out, there was absolutely no evidence of the threat of sexual abuse toward Don and Cassandra, whom appellant also surrendered for adoption. The trial court's finding that appellant failed to prove by clear and convincing evidence such extreme circumstances as to invalidate the surrenders was not against the manifest weight of the evidence. The trial court did not err in denying appellant's third applications for restoration of the minors to custody of the mother.
Appellant's next argument on appeal is that the trial court erred when it entered an order appointing the guardianship administrator of DCFS to consent to adoption without finding abuse, neglect, or dependency and without the benefit of a dispositional hearing. Section 2-21(1) of the Juvenile Court Act (Ill.Rev.Stat.1989, ch. 37, par. 802-21) requires that, at the adjudicatory hearing, the court make and note in the minutes of the proceeding a finding of whether or not the minor is abused, neglected or dependent. If such a finding is made, a dispositional hearing is to be scheduled at which the court is to determine whether it is in the best interests of the minor and the public that the minor be made a ward of the court. (Ill. Rev.Stat. 1989, ch. 37, par. 802-21.) Appellant argues on appeal that the trial court failed to *1373 make the required finding that her children are abused, neglected, or dependent, that no separate dispositional hearing was held pursuant to section 2-22 of the Juvenile Court Act, and that no finding that the disposition made was in the best interests of the minor and the public was made as required by section 2-22 of the Juvenile Court Act. (Ill.Rev.Stat.1989, ch. 37, par. 802-22.) We note that the State has chosen not to address this issue in its brief on appeal.
At the hearing held March 22, 1991, the court did adjudge each of the minors to be wards of the court based upon the evidence presented. In its written order, filed March 25, 1991, the court found that it was in the best interests of the minors and the public that appellant's parental rights be terminated, that the minors be made wards of the court, and that the guardianship administrator for DCFS be appointed guardian of the minors with power to consent to their adoptions. It is true, as appellant argues, that the court made no finding that the children were abused, neglected, or dependent and that the adjudicatory and dispositional hearings were consolidated into a single proceeding.
With respect to the consolidated adjudicatory and dispositional hearing, we note that appellant did not object to this procedure in the trial court, nor does she allege any prejudice as a result of this procedure. She suggests no dispositional evidence which might have been heard at a dispositional hearing which was not heard by the court, nor does she argue that the court heard dispositional evidence which was not appropriate at an adjudicatory hearing. Accordingly, we find no reversible error in the holding of a consolidated adjudicatory and dispositional hearing. See In re Prough (1978), 61 Ill.App.3d 227, 231, 17 Ill.Dec. 749, 753, 376 N.E.2d 1078, 1082; In re R.G. (1988), 165 Ill.App.3d 112, 132, 116 Ill.Dec. 69, 71-72, 518 N.E.2d 691, 703-04.
With respect to the trial court's failure to make an explicit finding that the children are abused, neglected, or dependent, appellant points out that it has been repeatedly held that the findings required by the statute are mandatory and jurisdictional, and where the order appealed from fails to contain the required findings, the court was without jurisdiction to enter the order. (In re Rosmis (1960), 26 Ill.App.2d 226, 231, 167 N.E.2d 826, 828; In re Bartha (1967), 87 Ill.App.2d 263, 267-68, 230 N.E.2d 886, 888-89; In Interest of Barr (1976), 37 Ill.App.3d 10, 13-14, 344 N.E.2d 517, 519-20.) However, based upon more recent opinions, we believe that where the trial court's order shows that the court implicitly made the required findings and those findings are supported by the record, the order of the trial court complies with the jurisdictional requirements of the statute. Thus, in In re Jennings (1977), 68 Ill.2d 125, 133, 11 Ill.Dec. 256, 260, 368 N.E.2d 864, 868, the trial court's order failed to explicitly adjudge the minors to be wards of the court. The order did, however, find the children to be dependent and appointed a guardian over them. The supreme court stated:
"The statute is concerned with the finding and adjudication of a particular status. It does not require that the order and proceedings be ritualized to the extent that language other than the words `ward of the court' which describes the same status may not be used." (68 Ill.2d at 133, 11 Ill.Dec. at 260, 368 N.E.2d at 868.)
See also In re E.P. (1988), 167 Ill.App.3d 534, 540, 118 Ill.Dec. 321, 324-25, 521 N.E.2d 603, 606-07.
In the instant case, the petitions alleged that the minors were both neglected and dependent. The trial court's order, terminating the mother's parental rights because she had signed irrevocable surrenders for adoption and terminating the fathers' parental rights because they had abandoned the children and failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the children, is sufficient to include findings that the minors are dependent and neglected as those terms are defined respectively in sections 2-4(1)(d) and 2-3(1)(a) (Ill.Rev.Stat.1989, ch. 37, pars. 802-4(1)(d), *1374 802-3(1)(a)). Furthermore, such a finding is adequately supported by the record. Accordingly, we find that the trial court's order of March 25, 1991, although not containing explicit findings that the children are neglected and dependent, is sufficient to comply with the jurisdictional requirements of the statute.
The final argument presented by appellant is that she did not receive effective assistance of counsel when she appeared in court on October 19, 1988, to sign the irrevocable surrenders of her parental rights. She asserts that she did not speak with her counsel prior to signing the surrenders, and that even a brief consultation would have dispelled appellant's mistaken belief that she had 90 days in which to change her mind about the surrenders. The counsel to whom appellant refers is the public defender who was appointed pursuant to section 1-5 of the Juvenile Court Act to represent her in the juvenile proceedings. (Ill.Rev.Stat.1989, ch. 37, par. 801-5.) Appellant's argument must fail because counseling by an attorney is neither a statutory nor a constitutional prerequisite to a valid surrender of parental rights under the Adoption Act. (In Interest of Nolan (1981), 94 Ill.App.3d 1081, 1088, 50 Ill.Dec. 442, 448, 419 N.E.2d 550, 556; In re Adoption of Hoffman (1975), 61 Ill.2d 569, 579-80, 338 N.E.2d 862, 867-68.) Where there is no right to counsel, there is no right to effective assistance of counsel.
For the foregoing reasons, the order of the circuit court of Williamson County entered March 25, 1991, is affirmed.
Affirmed.
CHAPMAN, P.J., and GOLDENHERSH, J., concur.