661 N.E.2d 437 (1996)
277 Ill. App.3d 803
214 Ill.Dec. 583
In re S.G., W.G., C.G., K.G., Minors (The People of the State of Illinois, Petitioner-Appellee
v.
Pearlie G., Respondent-Appellant).
No. 1-93-2390.
Appellate Court of Illinois, First District, First Division.
January 29, 1996.
Rehearing Denied March 1, 1996.
Rita A. Fry, Public Defender of Cook County (Murray M. Coffey, Asst. Public Defender, of counsel), for appellant.
Jack O'Malley, State's Attorney, County of Cook (Renee Goldfarb, Wiliam D. Carroll, Tyra Taylor-Bell, Asst. State's Attorneys, of counsel), for appellee.
Patrick T. Murphy, Lee Ann Lowder, Susan S. Wigoda, Office of the Cook County Public Guardian, Chicago, IL, for minor appellees.
Justice WOLFSON delivered the opinion of the court:
This case contains the ingredients for an inevitable clash with the statutory call for prompt dispositions in juvenile court abuse and neglect cases: an unconscionably crowded court calendar, an abundance of lawyers vigorously representing their clients, the existence of a variety of statutory rights, and a conscientious but overworked trial judge.
Section 2-14 of the Juvenile Court Act (705 ILCS 405/2-14 (West 1992) requires the dismissal of a petition alleging sexual abuse and neglect of children if the adjudicatory hearing is not held within 90 days of the day process is served. In addition, one continuance of 30 days is allowed for good cause. This case requires us to examine the statute, because 193 days went by between the time all necessary parties were served and the conclusion of the adjudicatory hearing.
*438 We hold the legislature meant what it said in section 2-14. We find the trial court erred in refusing to dismiss the petitions without prejudice.

JUVENILE COURT PROCEEDINGS
Pearlie G. is the mother of Wynetta G., Kory G., Selina G., and Carla G. Pearlie is represented by the public defender's office. Kory, Selina, and Carla are represented by the Office of the Public Guardian (OPG), and the Cook County State's Attorney represents the State. All are parties to this appeal. Pearlie is the appellant. Wynetta was represented by the Legal Assistance Foundation in the trial court, but has been dismissed from this appeal.
The first reported facts in this case took place on February 27, 1991, when the Illinois Department of Children and Family Services (DCFS) investigated a report that Wynetta was sexually abused by her mother's paramour.
Wynetta reported that Maurice Smith came into her room while she slept. He partially undressed her and then penetrated her. Wynetta woke up and ran into her brother Kory's room. She then ran to her mother's room, as she was bleeding from the vagina.
DCFS found credible evidence to support the report and "indicated" it. However, DCFS did not bring the family to the attention of the juvenile court. Wynetta eventually recanted her allegation against Maurice Smith. She said that she made up the charges because she did not like Maurice Smith and did not want her mother to see him.
The current case began on April 28, 1992, when petitions for adjudication of wardship were filed on behalf of Wynetta and her three siblings. At that time Wynetta was 15, Kory was 13, Selina was 12, and Carla was seven. The petitions alleged that the children were sexually abused, and that they were neglected because their environment was injurious to their welfare.
The petitions were filed after Kory called the DCFS hotline to report that his mother sexually assaulted him on three separate occasions. The Chicago police department began to investigate the allegations on April 21, 1992.
Kory's younger sister, Selina, reported that she witnessed one of the incidents of Kory's sex abuse by her mother. The mother was arrested and charged with aggravated criminal sexual assault.
On April 23, or 24, 1992, Kory recanted. He said that he made the story up because his mother was too strict with him. Selina also said she made the story up about witnessing Kory's sexual abuse.
Both Kory and Selina persisted in their recantations after police authorities told them that they could be prosecuted for giving false information to the police.

Temporary Custody Hearing
On April 28, 1992, the Court conducted a temporary custody hearing. Donna Hendricks of DCFS informed the court that the mother was incarcerated at 26th and California as a result of the sex abuse allegations. Ms. Hendricks testified that DCFS received a hotline report that Kory had been sexually abused by his mother. In addition, the mother's paramour, Maurice Smith, had been living in the home with the children since February, 1991, when DCFS "indicated" the report that he sexually abused Wynetta.
Ms. Hendricks said that she talked to all of the children. Kory responded positively when asked if his mother sexually abused him.
The court found probable cause, urgent and immediate necessity, and good cause why reasonable efforts could not prevent the removal of the children from the mother's custody. The court named Gary T. Morgan as temporary custodian with right to place.

Second Temporary Custody Hearing
On June 22, 1992, Pearlie appeared in the juvenile court after being released from prison when criminal charges against her were dismissed. She asked for and was granted a second custody hearing. After that second hearing, the initial finding of probable cause was allowed to stand. An adjudicatory hearing would be required. Pearlie at all times denied the charges of sexual abuse of her children.
*439 No one knew where the children's fathers were. They were given notice by publication and defaulted on September 1, 1992. The juvenile court judge noted that the time for the statutory limits began on September 1, 1992, and that the last day for the hearing to be held would be November 30, 1992. All parties to this appeal accept September 1 as the date statutory time limits began, although we note Pearlie had been served much earlier, on April 28, 1992, and she appeared in court on June 22, 1992.
Space does not permit us to provide details of the proceedings on each of the 21 occasions this case was heard between April 28, 1992, and March 12, 1993, when the adjudication hearing was completed. Suffice it to say that the trial judge kept trying to find time for the hearing, Pearlie continuously asked for a trial, the State answered ready, lawyers made motions and objections, and the case was heard piecemeal after a perfunctory beginning on December 15, 1992, finally getting under way on March 8, 1993.
At one point, the OPG attorney asked for a continuance of the hearing because she was scheduled to undergo surgery. The trial judge, finding the statutorily required "good cause," continued the hearing from the set date of November 10, 1992, to December 15, 1992.
On March 8, 1993, the trial judge heard and denied Pearlie's motion to dismiss the petitions. In doing so, he said:
"This case is unusual because of the substitution of attorneys, because of the great number of pretrial motions that were filed on behalf of the children and other parties as well as by the fact that the lawyers have suggested that there would be as many as 10 to 12 witnesses testifying in this case.
In fact, I've blocked out this day and two subsequent days on this court calendar to hear this case because of its complexity and because of the adversarial stances that have been taken by the parties. With 4000 cases on the Court call, it's just impossible to hear 10-, 12-witness cases and take 20 hours of court time to try them without scheduling in this manner.
Each of the continuances that was had in this case was done with the best interest of the children in mind. Each was done out of necessity. And we certainly believe that the spirit of the statute has been followed.
I would also state unequivocally that it would not be in the best interest of these children to dismiss these petitions at this time. The motion to dismiss filed by the public defender on behalf of the mother and joined in by counsel and GAL for [Wynetta G.] is respectfully denied."
On March 12, 1993, the juvenile court determined that all of the children were neglected because their environment was injurious to their welfare. The court also found that Wynetta was sexually abused. The court further found that the State failed to meet the burden of proving that Kory was sexually abused.
On April 12, 1993, the juvenile court held the dispositional hearing. The court found that it was in the best interests of Wynetta, Selina, and Carla to be adjudged wards of the court. The court found the fathers were unwilling to care for the children. By agreement of the parties, the court found the mother fit, willing, and able to care for Wynetta, Selina, and Carla. The court ordered that Wynetta remain in her mother's custody and that Selina and Carla be returned to their mother's custody under an order of protective supervision. The court found that it was in Kory's best interest to be adjudicated a ward of the court. The court found the father unwilling and the mother unable to care for him. The court vacated temporary custody and appointed Gary T. Morgan as K.G.'s guardian.

OPINION
The authority of a judge in juvenile court proceedings originates from the Juvenile Court Act (705 ILCS 405/1-1 et seq. (West 1992)).
In all proceedings under the Act "the trial court's primary concern is the best interests of the child involved." (In re Ashley F., People v. Diana F. (1994), 265 Ill.App.3d 419, 424, 202 Ill.Dec. 722, 725, 638 N.E.2d 368, 371.) For example, a juvenile court judge has discretion to determine whether *440 the State's motion to dismiss a petition for adjudication of wardship is in the best interests of the child. In re J.J. (1991), 142 Ill.2d 1, 153 Ill.Dec. 239, 566 N.E.2d 1345.
We are called on to determine whether the trial judge in this case had the discretion to proceed with an adjudicatory hearing after the statutory time limits had run out.
Section 2-14 of the Act establishes those time limits;
"(b) When a petition is filed alleging that the minor is abused, neglected or dependent, an adjudicatory hearing shall be held within 90 days of the date of the service of process upon the minor, parents, any guardian and any legal custodian."
Subsection (c) provides for one extension of up to 30 days when "good cause" is shown. It goes on to say:
"If the adjudicatory hearing is not heard within the time limits required by subsection (b) or (c) of this section, upon motion by any party the petition shall be dismissed without prejudice."
Because the parties disagree about how to determine the statutory time limits in this case we have done our own calculation.
Taking the September 1, 1992, default of the absent fathers as the triggering event, we count 193 days to the date the adjudicatory hearing was concluded on March 12, 1993. From that we subtract the 30-day continuance allowed by the statute. In doing so, we assume, without deciding, that the surgery to be undergone by one of the attorneys in the case was "good cause" and "in the best interests of the minor" under section (c) of the statute. That leaves 163 days between the time all parties are served to the end of the adjudicatory hearingfar beyond the limit of 90 days.
Our calculation necessarily assumes the statute was not satisfied when the trial judge heard opening statements and one nonessential witness on December 15, 1992.
We reach that conclusion for several reasons.
First, the legislature's choice of words. Section (c) states the petition shall be dismissed without prejudice "if the adjudicatory hearing is not heard within the time limits * * *." (Emphasis added.) "Heard" was the selected word, not "commenced," "started," or "begun."
Second, the legislative history. During the Senate debates on the proposal that became section 2-14 its sponsor, Senator Topinka, said:
"* * * It requires adjudicatory hearings be held within ninety days of the date of service of process of cases alleging that a child is abused, neglected or dependent. It also requires petitions to be dismissed without prejudice upon motion of any party if the hearing is not heard within the required time limits. * * * The interest is to move cases through the Juvenile Court system at a more timely pace to enable permanency planning for children to be more realistic. * * *." 86th Ill. Gen. Assem., Senate Transcript, June 29, 1990, at 234-35. (Emphasis added.)
In support of the bill, Senator Rock, the Senate president, said:
"* * * This amendment I think is a good one. I have spent probably four or five hours with Mr. Ghesquiere from the Governor's office, and Gordon Johnson and some other interested people. What we're attempting to doand I'm sure all of you have read the Bob Greene column about the youngster called Sara, who somehow Mr. Greene claimsgot lost in the system. And the reason that youngster got lost, it is alleged, is because there were no time lines. There was no set period within which the court had to respond to petitions and had to make an adjudicatory ruling. This will set up those time lines. * * * I think that it does establish those time lines within which a court has to respond to a petition on behalf of a youngster who might otherwise get lost in the system * * *." 86th Ill.Gen.Assem., Senate Transcript, June 29, 1990 at 236. (Emphasis added.)
The third reason for concluding that "held" means completed has to do with the purpose of the statute. In section (a) the legislature set out the "purpose and policy" of the statute:

*441 "The legislature recognizes that serious delay in the adjudication of abuse, neglect, or dependency cases can cause grave harm to the child and the family and that it frustrates the effort to establish permanent homes for children in need. The purpose of this Section is to insure that, consistent with the federal Adoption Assistance and Welfare Act of 1980, Public Law 96-272, as amended, and the intent of this Act, the State of Illinois will act in a just and speedy manner to determine families in need, reunify families where appropriate and, if reunification is inappropriate, find other permanent homes for children." (Emphasis added.) 705 ILCS 405/2-14(a) (West 1992).
If judges were free to defeat the statutory time limits by making a technical start, then continue the hearing from time to time, beyond the limits, the "purpose and policy" of the statute would be completely frustrated. In fact, that is what happened in this case.
The State contends that even if the time limits were exceeded, the trial judge had discretion to proceed once he determined that dismissal was not in the best interests of the children. The State asks us to read the words "shall be dismissed" as permissive.
We do not agree. Whether a statutory provision is deemed mandatory or merely directory depends on the intent of its drafters. (People v. Youngbey (1980), 82 Ill.2d 556, 562, 45 Ill.Dec. 938, 413 N.E.2d 416.) Here, the drafters told us their intentthe hearing must be "heard within the required time limits"; until this statute was enacted "there was no set time period the court had to respond to petitions and had to make an adjudicatory ruling"; serious delay in adjudication can "cause grave harm to the child and to the family"; the intent of the Act is for the State to act in a "just and speedy manner."
The statute must be interpreted on the basis of what was written, and "courts should not search for any subtle or not readily apparent intention of the legislature." Trittipo v. O'Brien (1990), 204 Ill.App.3d 662, 666, 149 Ill.Dec. 505, 507, 561 N.E.2d 1201, 1203.
The fact that a time limit is found in the Juvenile Court Act does not license a trial judge to ignore clear statutory language. For example, in In re C.T.A. (1995), 275 Ill.App.3d 427, 211 Ill.Dec. 733, 655 N.E.2d 1116, a minor alleged to be delinquent was placed under continued supervision, as authorized by section 5-19 of the Act. The trial judge extended the supervision beyond the 24-months limit established by section 5-19(4) ("* * * when a hearing where a minor is alleged to be a delinquent is continued pursuant to this Section, the period of continuance under supervision may not exceed 24 months"). The court reversed the extension order, holding that the clear language of the statute required a mandatory interpretation.
In this case, the legislative command is clear and we are not free to disregard it. In section 2-14 the legislature has determined that the best interests of the child and the child's family are better served when judges follow strict time limits. Until the adjudicatory hearing was completed, Pearlie's children remained in the temporary custody of DCFS. This is the kind of serious delay "that can cause grave harm to the child and the family." 705 ILCS 405/2-14(a) (West 1992).
The statute we examine today became effective July 1, 1991. Its predecessor (Ill.Rev. Stat.1987, ch. 37, par. 802-14) was different in tone, more closely resembling the speedy trial provisions in the Criminal Code (see 725 ILCS 5/103-5 (West 1992)).
The former statute provided a 120-day time limit for holding an adjudicatory hearing, with an additional 30-day continuance allowed for the State to obtain evidence. The limit was triggered by a demand for trial. Delays caused by the minor tolled the running of the statute. When the time limit was violated the petition was to be dismissed with prejudice.
The current statute reduced the time limit to 90 days, with a single 30-day continuance for good cause. No demand is necessary. Conduct by the minor no longer tolls the running of the statute. A dismissal for violating the time limit now is without prejudice.
Cases cited by the State in support of a directory reading for section 2-14 interpreted the former statute, where a dismissal was with prejudice. (See In re Jackson (1993), *442 243 Ill.App.3d 631, 183 Ill.Dec. 708, 611 N.E.2d 1356; In re B.W. (1991), 216 Ill. App.3d 410, 159 Ill.Dec. 677, 576 N.E.2d 346.) The current statute, as we have said, added the "purpose and policy" language of subsection (a), a clear change in direction from the strictures and attitudes of the adversarial process, with its criminal law overtones. Section 2-14 places the responsibility for timely adjudication where it belongson the entire court system. An overcrowded calendar cannot relieve participants of their statutory responsibility.
The State says it should not be "punished" with dismissal when it answers ready each time the case is called for hearing. The State misses the point. These are not criminal proceedings. They are supposed to be civil, "both in the legal and lay sense of the word." In re J.J. (1991), 142 Ill.2d 1, 8, 153 Ill.Dec. 239, 566 N.E.2d 1345.
The goal of all participants should be, as section (a) tells us, to "act in a just and speedy manner to determine families in need, reunify families where appropriate and, if reunification is inappropriate, find other homes for children." 705 ILCS 405/2-14(a) (West 1992).
We find the trial court erred when it denied the motion to dismiss the petitions. On remand, the State is free, if it wishes, to refile the petitions.
Because of our disposition of the time limit issue, there is no need to discuss Pearlie's claim that the delay in adjudication violated her right to due process of law. Nor is there any need to discuss the evidentiary issue she raises concerning expert testimony in sex abuse cases.

CONCLUSION
The order denying the appellant's motion to dismiss is reversed and this cause is remanded with instructions to enter an order dismissing the case without prejudice.
REVERSED and REMANDED.
CAMPBELL, P.J. and BRADEN, J., concur.